[Wilkinson v. City of Birmingham.]

# Wilkinson *v.* City of Birmingham.

*Assumpsit.*

(Decided February 4, 1916. Rehearing denied May 20, 1915.
68 South. 999.)

1. *Judges; Police Court; Recorder; Nature of Office.*—The office of recorder created by the city council of Birmingham may be abolished by the city commission under section 6, Acts 1911, p. 208; such office not being a constitutional office.

2. *Same; Salary.*—Where the office of recorder of the police court of a city has been legally abolished, the incumbent's right to the salary ceases.

3. *Same; Abolition; Effect.*—Where the commission of a city could by ordinance abolish the office of recorder, but abolished the same by resolution, the incumbent of such office waived the objections to the methods employed in the abolition of the office by acquiescing therein.

4. *Same.*—Where the police recorder remained entitled to the salary of that office because it was abolished by resolution instead of by ordinance, the fact that he took no action during the eighteen months which remained of the term for which he was elected, to test the validity of the abolition, as well as the fact that he practiced law and appeared in cases which would have fallen within his jurisdiction as such recorder, had his office not been abolished, may be looked to and considered on the question of his acquiesence.

5. *Same.*—The facts considered, and it is held that under them the plaintiff acquiesced in the informal abolition of his office, and was therefore not entitled to his salary.

6. *Officers; Abandonment.*—Abondonment of an office, such as to create a vacancy is not wholly a matter of intention, but may result from complete abandonment of the duties for such a time that the law will infer a relinquishment.

7. *Judges; Officers; Salaries.*—In an action for a salary claimed to be due the recorder of a police court the complaint was subject to demurrer because it did not show wherein plaintiff was wrongfully prevented from discharging the duties of his office.

8. *Appeal and Error; Harmless Error; Pleading.*—If it was error to sustain a demurrer to a complaint, the error was harmless where, under the evidence, there could have been no recovery under the complaint.

APPEAL from Birmingham City Court.
Heard before Hon. H. A. SHARPE.

[Wilkinson v. City of Birmingham.]

Action by Horace C. Wilkinson against the City of Birmingham to recover his salary as recorder. Judgment for defendant, and plaintiff appeals. Affirmed.

A. G. & E. D. SMITH, and HORACE C. WILKINSON, for appellant.

ROMAINE BOYD, and M. M. ULLMAN, for appellee.

SAYRE, J.—This was an action by appellant to recover a balance of salary claimed by him as one of the recorders of the city of Birmingham. In January, 1910, the office of recorder for police district No. 3, composed of the Twelfth and Thirteenth wards of the city of Birmingham, was created and established by ordinance. In October, 1910, the minutes of the council show that appellant was elected to the office of "recorder of the Third precinct" for a term ending October 1, 1912. Under this election he entered upon and discharged the duties of recorder for police district No. 3 until April 11, 1911, shortly after the reorganization of the municipal government under the act of March 31, 1911, entitled "An act to provide and create a commission form of government," etc. (Acts 1911, p. 204 et seq.), when the commission passed a resolution abolishing forthwith the office of "recorder No. 4 [at Woodlawn]." Appellant sought to recover his salary from that time for the remainder of the term to which he had been elected.

After April 11, 1911, both the commission and the appellant acted upon the understanding that the resolution of that date had been aimed at the office held by him; the commission causing all business to be transferred to and transacted in another place and before a different recorder; while appellant, having pro-

[Wilkinson v. City of Birmingham.]

tested to individual members of the commission that
they had no right to deprive him of his office or its
emoluments during the term for which he had been
elected, but making no formal complaint to the com-
mission in its official capacity, nor making any formal
demand for his salary, which was payable in monthly
installments, nor resorting to legal process for a de-
termination of his right to the office or its salary, con-
tinued at regular intervals to visit the place at Wood-
lawn where he had formerly held court, but where he
found nothing to do, intending thus perhaps to evidence
his continued claim upon the office and his readiness
to discharge its functions, or, as the jury may have
found, his purpose was by this course, as illustrated
by his declarations, to assert only his right to his ap-
pointed compensation, even though his office had been
lawfully abolished. From the evidence also the jury
were authorized to find that during the same period
he appeared on divers occasions in the court to which
the jurisdiction and business of the court at Wood-
lawn had been transferred under the order of the com-
mission, prosecuting or defending criminal or quasi
criminal cases which would have been triable before
himself had his recordership not been abolished. There
was other evidence to which we shall later refer.

(1-3) There is no reason to doubt that the commis-
sion had power and authority to abolish the office held
by appellant. It was not a constitutional office. It had
been created by the city council; it might be abolished
by the commission. It was so provided in section 6 of
the act of March 31, 1911 (Acts 1911, supra). No ele-
ment of contract was involved, and when the office
ceased the salary ceased.—*Oldham v. Birmingham,* 102
Ala. 357, 14 South. 793, and authorities cited. Nor is

it to be doubted that at the outset of this controversy, and consistently ever since, so far as appellee knew or was given to understand, appellant's insistence took one or the other of two forms: He denied in toto the power of the commission to abolish the office, or he contended, that even though the office were abolished, he was entitled to full pay for the term for which he had been elected. Now it appears that appellant's only colorable objection is to the manner in which the will of the commission was expressed. In other words, the only colorable objection is that the commission attempted by resolution to do that which could be done by ordinance only, and that the resolution itself was insufficient for its intended operation in any event, because in terms it undertook to abolish the office of recorder No. 4 (at Woodlawn), whereas appellant was filling the office of recorder for police district No. 3, composed of the Twelfth and Thirteenth wards of the city of Birmingham. In respect of this objection to the form of the resolution it will be enough to say on the evidence before us that both appellant and the commission understood perfectly well that the resolution intended to deal with the office appellant was holding; and, if appellant's tenure were to be determined on any mere form of words, it might be difficult for him to explain his de jure right to the office of recorder for police district No. 3 under an election to the office of recorder of the third precinct. But we attach no importance to these differing phrases, for evidently they were each employed for the designation of the office in which appellant for some time served, and so were put into practical operation.

In the trial court it was held that appellant's office could be abolished only by an ordinance, not a resolu-

[Wilkinson v. City of Birmingham.]

tion, and so the issue of the controversy was made to depend upon the question of fact whether appellant had abandoned the office or had acquiesced in the commission's resolution abolishing it, and this was left to be decided by a jury.

We shall assume, without deciding, in favor of appellant, that an ordinance was necessary, and shall inquire whether the trial court, in submitting the issue of fact to the jury, committed any error prejudicial to appellant, for it is clear, we think, that if appellant acquiesced in a result which the commission had undeniable power and authority to bring about, he thereby waived objection to the mere method employed, and must stand concluded.

(4, 5) Appellee was allowed to show that appellant had made no formal application to the board of com missioners to be reinstated; that he did not advise the commissioners as officials that he did not recognize the validity of their resolution; that he had made no demand on the commission or the comptroller for his salary during the remainder of the term for which he had been elected; that he resumed and continued to practice law; that he devoted practically all his time to the practice; and some other such matters. Some of these matters were possibly of negligible consideration and are not specifically treated in the briefs. Appellee was also allowed to show that after the resolution, and during the 18 months that remained of the term for which appellant had been elected, he took no action by certiorari, mandamus, or otherwise, to test the validity of the action by which the commission undertook to abolish his office. If the commission had been wholly without power to abolish the office, and yet attempted to do so, and thus excluded appellant, it may be that none

of this evidence would have been of any consequence; but, seeing that appellant's claim to compensation depended altogether upon an irregularity in the method of exercising a power the commission very clearly had, that it must be presumed the commission undertook in good faith to abolish the office as unnecessary or for reasons of economy in the administration of the municipal government, and hence that, if advised of the objection to their method, they would either have reinstated appellant or expressed their will to abolish by a formal ordinance, we are of opinion that his failure to bring his contention, or that part of his contention which alone had merit, to the attention of the municipal authorities, was competent, relevant, and of some materiality as tending to show that he acquiesced in the authority of the resolution; and, if he acquiesced in the abolition of his office, his claim to the salary was lacking in legal support or justification, although his acquiescence may have been qualified and affected by an erroneous and wholly untenable notion that he could not be deprived of the salary, though the office were legally abolished.

Appellant was not required to keep up an unseemly clamor, but, in view of the only ground of complaint open to him and the fact that his claim for services not in fact rendered was accumulating against the city, the jury may have very reasonably entertained the opinion that he should not have delayed for 18 months to put the matter of his right and the irregularity upon which of necessity it rested to some adequate test by judicial inquiry, or otherwise, and, failing in this, the jury may have found an acquiescence in the resolution as a valid exercise of the commission's power to abolish appellant's office.—*Byrnes v. St. Paul*, 78 Minn. 205,

80 N. W. 959, 79 Am. St. Rep. 384. In the case of
*Larson v. St. Paul,* 83 Minn. 473, 86 N. W. 459, to
which appellant refers with the appearance of great
confidence, an officer, holding office defacto and de jure
as the court ruled, was removed by the mayor, who had
no authority to make such removal, except with the
approval of the assembly, a branch of the city council.
Within a few days he took his grievance to the assem-
bly, which expressly refused to approve the order of
removal, and the officer "always asserted and main-
tained his right to the position," and its pay. Some three
months later he was restored, and then brought his suit
for his pay accruing in the interval. In these circum-
sances the court found, as a matter of fact, that his fail-
ure to institute legal proceedings against the city to
cause an earlier reinstatement did not amount to a
resignation by implication. This statement of the case
will serve to show that it is not opposed to anything
we have said. It would seem also that cases in which
incumbents have failed to hold out against action by
the Legislature, which was afterwards found to be un-
constitutional, are hardly in point. An officeholder who
has been deprived of his office by an unconstitu-
tional act may have no opportunity to carry his con-
tention that the act was void to the Legislature, and
in any case he may very well feel that there is no bur-
den on him to question the act of the supreme power
of the state. But the act of a municipal corporation
rests upon different grounds. Our ruling on this point
is simply this, that it was proper to submit to the jury,
along with the other facts in evidence, the circumstance
that appellant's alleged grievance was not brought in
some shape to the attention of the commission, which
was always at hand, and, it must be presumed, always

ready and willing to correct errors in their proceedings.

Still treating the issue as one proper for submission to a jury, a finding, as the jury were authorized to find on plain tendencies of the evidence, that appellant had during the time covered by his claim engaged in the defense or prosecution of criminal or quasi criminal causes which it would have been his duty, his office and tenure remaining intact, to hear and determine in his judicial capacity as recorder, may on proper consideration have had weight with the jury in reaching the conclusion that appellant had acquiesced in the abrogation of the office previously held by him. In this connection it was of no consequence that the mayor, under the former municipal organization, had aided or acquiesced in this practice. Without intending at all to reflect upon appellant's good faith or efficiency in the discharge of the duties of his office, yet it must be said that this particular feature of it, considered from a strictly legal standpoint, was at all time essentially incompatible with the duties imposed by the office, however careful the incumbent may have been to get the consent of the mayor, as he did, and to a knowledge of this legal implication of his course after the resolution was adopted appellant is held, presumptively at least. And, whatever may have been the attitude of the precedent municipal authorities, the adoption of the resolution purporting to abolish appellant's office left no room for an inference that the commission, if informed that the resolution was for any reason ineffectual, would have continued to approve, if approval made any difference. It was then proper to submit to the jury evidence along this line.

Conceding that the considerations to which we have referred were not conclusive against appellant, it is cer-

tain that on them the jury might have properly found against him, and hence it follows that he was not entitled to the general affirmative charges requested.

Charges B and X were properly refused, for the reason that they were equivalent to the general charge for appellant as to those issues of fact which were in dispute and as to which the evidence was in conflict.

(6) Abandonment of office, that is, an abandonment which will operate to create a vacancy, is not wholly and always a matter of actual intention. It may result from a total and complete abandonment of duties of such continuance that the law will infer a relinquishment on the principle that every man must be presumed, whether so in fact or not, to intend the inevitable consequences of his intentional acts. Charge C was refused without error.—Throop, Pub. Off. § 417 et seq.

Charges given at the request of appellee were clearly in line with what we have said concerning those meritorious considerations which the appellee was allowed to place before the jury.

(7) The demurrer to count 1, which, with the ruing on demurrer to count 2, is treated in the penultimate propositions of the respective briefs, was properly sustained, for the reason that it failed to point out wherein the action of the commission in preventing appellant from discharging the duties of the office was wrongful. This was remedied in the third count on which the case was tried, where it was shown that the action of the commission was wrongful because taken by resolution, rather than by ordinance, as the court consistently ruled it should in strict law have been taken

(8) If there was error in sustaining the demurrer to count 2 of the complaint, it was harmless, for this reason: The count averred that appellant discharged

the duties of his office, and we may assume in his favor, since the demurrer took no point against the averment, that this was the equivalent of an allegation that he discharged the duties of the office' during some or all the time for which he claimed compensation. But it appears from the bill of exceptions, which is before us, and which purports to contain all the evidence adduced upon the trial, that the concurring testimony offered by the parties was to the uncontradicted effect that appellant had not during the time covered by his claim performed any of the duties of the office. Appellant proved the fact in the effort to sustain the averments of count 3. For purposes of its own appellee supplemented the proof of the same fact. It cannot be supposed that the evidence on this point would have been to the contrary had the demurrer to count 2 been ruled differently. So, then, had the demurrer not been sustained, as matter of law, appellant could not have recovered on the second count. If there was error, it was harmless, and not reversible.

There was no merit in the motion for a new trial.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.