**CLAUDE A. RENSHAW, as City Manager of the City of Miami Beach, Florida; JAMES SILLS, as Director of the Department of Personnel of the City of Miami Beach, Florida; and WILLIAM ROBERTS, as Paymaster of the City of Miami Beach, Florida, v. STATE OF FLORIDA, ex rel. ALBERT G. HICKLAND.**

5 So. (2nd) 700                    Special Division B

January 20, 1942

J. Harvey Robillard, and L. A. Schroeder, Jr., for plaintiffs in error.

Jack Kehoe & A. Samuel Bender, for defendant in error.

CHAPMAN, J.:

From an order awarding a peremptory writ of mandamus entered by the Circuit Court of Dade County, Florida, directed to the City of Miami Beach, the respondent below, commanding it to restore Albert G. Hickland, the relator below, to the position of Taxi Cab Inspector formerly held with said city, and pay to him the sum of $5,890.00 on account of back salary at the sum of $190.00 per month from October 1, 1938, to May 1, 1941, an appeal has been perfected to this Court.

Chapter 18696, Special Acts of 1937, Laws of Florida, created a Civil Service System for designated officers and employees of the City of Miami Beach. The Act was made effective by a majority of the qualified voters of the City of Miami Beach voting at an election held for that purpose during January, 1938.

Section 10 of the Act provided that any person holding an office or position in the classified service of the city and having been so employed for a period of nine months prior to the time that the Act became effective by ratification and approval by the voters should be retained and not subject to the working test set out in the Act. The relator below is admitted to be within this classification as he had been an employee of said city since 1935. He was paid by the respondent below for his services previously rendered to the City monthly, inclusive of June, 1938. He was away on a vacation for the months of July, August and September, 1938, and did not claim compensation for these months. The relator was an employee of the classi-

fied service and it is contended that he was removed arbitrarily and not in conformity with the several provisions of Chapter 18696, *supra,* and the personnel rules proposed by the Personnel Board and adopted by the City Council of Miami Beach, Florida.

The relator was given employment as a Motor Vehicle Inspector by the City of Miami Beach during the year 1935 by the City Manager and retained the employment until July 1, 1938, under Ordinance No. 368:

"Be It Ordained By the City Council of the City of Miami Beach, Florida:

"That Ordinances numbered 251 and 356 of the City of Miami Beach, Florida, be and they are each hereby amended by adding thereto immediately after Section 14 thereof the following Section:

"Section 1: 'Section 14-A: It shall be the duty of the Operator of each such motor vehicle to present same to the City Manager or such officer as he may designate, at least one each month during the life of said permit for inspection to ascertain as to whether or not such motor vehicle is in good and sufficient mechanical condition. Notation of such inspection shall be made by the inspector upon the permit carried by said operator. Failure to present said motor vehicle for inspection, or if upon inspection same shall be found not to be in good and sufficient mechanical condition, shall render the permit for same to operate, subject to revocation. The fee for each such inspection shall be Two Dollars ($2.00) to be paid by the operator of said motor vehicle and shall go into the City Treasury. The salary of said Inspector shall be $150.00 per month.'

"Section 2: Whereas, an emergency exists, this Ordinance is hereby declared to be an emergency measure on the ground of urgent public need for the preservation of peace, health, safety, welfare, and property in the City of Miami Beach.

"Section 3: All Ordinances and parts of Ordinances in conflict herewith are hereby repealed.

"Passed and Adopted this 2nd day of January, 1935."

The duty of inspecting motor vehicles by Ordinance No. 521 enacted August 17, 1938, by the City of Miami Beach was changed from the City Manager to the Police Department of the City. The Ordinance No. 368 under which employment was given the relator by the City Manager was repealed and the duties of car inspector transferred to the Police Department. It is not contended that the City was without the power to enact Ordinance No. 521, thereby repealing Ordinance No. 368.

Ordinance No. 521 provides:

"Be It Ordained By the City of Miami Beach, Florida:

"Section 1: That Section 14-A of Ordinance No. 356 of the City of Miami Beach, Florida, be and the same is hereby amended to read as follows:

"Section 14-A: It shall be the duty of the operator of each such motor vehicle to present same to the Police Department of said City at least six times during each year on notice by said department, during the life of said permit, for inspection to ascertain as to whether or not such motor vehicle is in good and sufficient mechanical condition. Notation of such inspection shall be made by said Police Department upon the permit carried by said operator. Failure to

present said motor vehicle for inspection, or if upon inspection same shall be found not to be in good and sufficient mechanical condition, shall render the permit for same to operate, subject to revocation. The fee for each inspection shall be Two ($2.00) Dollars, to be paid by said operator of said motor vehicle and shall go into the City Treasury.

"Section 2: Ordinance No. 368 of the City of Miami Beach, Florida, and all ordinance and parts of ordinances in conflict herewith are hereby repealed.

"Passed and Adopted This 17th day of August, A. D. 1938."

The record discloses that the relator was by the respondent paid for his services until July 1, 1938. The ordinance transferring the duties of Car Inspector from the City Manager to the Police Department was enacted August 17, 1938. It was suggested that the duties of Car Inspector were increasing and more efficient service could be effected by inspection of the cars by the Police Department rather than by the City Manager, under whom the relator performed his services. The relator testified that he was advised in September, 1938, that his employment had been abolished. Relator had rendered at one time, services as Liquor Inspector.

The alternative writ of mandamus issued on July 19, 1940, approximately two years after relator received his last salary check. The reasons assigned for not filing suit earlier appear in the record and have been carefully considered. The question presented for adjudication is: Is the relator, from this state of the record, by his conduct and failure to institute action within the two year period, now barred by lapse of time from maintaining this action?

The case of Landis, Atty. Genl. ex rel. Quigg v. Reeve, 106 Fla. 28, 142 So. 654, involved the office of Chief of Police of the City of Miami, Florida. The incumbent was removed and another appointed and assumed the duties of the office and had discharged them for a period of approximately three years when suit was filed seeking reinstatement. The lower court denied the order sought and on appeal here the same was affirmed, when this Court, in part, said:

"Even when one is illegally removed from an office he must act with reasonable diligence to have himself reinstated. He cannot acquiesce for more than three years during which another has been appointed to fill the vacancy caused by his removal, has performed the duties and drawn the compensation and then not be said to have waived or abandoned any right he may have had thereto. . . ."

The rule enunciated by this Court in Landis ex rel. Quigg v. Reeve, *supra,* is in harmony with the views of the Supreme Court of the United States as expressed in the case of Arant v. Lane, 249 U. S. 367, 63 L. Ed. 650, 39 Sup. Ct. 293. Arant was serving by appointment as Superintendent of Crater Lake National Park. He was in the classified Civil Service of the Government. The Secretary of the Interior, Franklin K. Lane, by telegram removed him on June 28, 1913. He was forcibly ejected from the Government Office Building and the records and papers of the office seized by government officials. Arant contended that as a Civil Service employee he could not be removed except for cause; that charges in writing should be made and presented to him, and that he should have an opportunity to answer.

The government contended that if Arant was a Civil Service employee and could be removed only for cause, but regardless of a hearing, certain facts or conditions have occurred as will preclude an interference on the part of the courts, in that on July 1, 1913, another person was appointed to discharge the duties of the office and had received compensation and that Arant had not sought recourse to the courts until the lapse of nearly *two* years, he by laches was barred of any right then possessed by him.

The Court sustained this contention and in part said (text 249 U. S. 372):

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to affectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interest of justice and sound public policy.

In this conclusion we are in full agreement with many state courts in dealing with similar problems.

McCabe v. Police Board, 107 Louisiana, 162; Stone v. Board of Prison Commissioners, 164 Kentucky; 640; Connolly v. Board of Education, 99 N. Y. Supp. 737, and cases cited; Clark v. City of Chicago, 233 Illinois, 113."

The courts of other jurisdictions generally hold that in the absence of the showing of a just and reasonable excuse for failure or delay to institute legal proceedings for reinstatement within a reasonable length of time of removal, relief may be denied on the ground of laches or unreasonable delay in asserting that right. See State ex rel. Lutz v. Sewerage & Water Board of New Orleans, 179 La. 742, 155 So. 10; Crais v. City of New Orleans, 172 La. 931, 136 So. 7; Swanitz v. Wolff, 26 Cal. App. (2nd) 311, 79 Pac. (2nd) 173; State ex rel. Avel v. City of Seattle, 137 Wash. 142, 242 Pac. 9; City of Paducah v. Gillispie, 273 Ky. 101, 115 S.W. (2nd) 574; Morris v. Hartsfield, 186 Ga. 171, 197 S. E. 251; and in McQuillin on Municipal Corporations, Revised Vol. 2 (2nd Ed.) par. 596, page 511, it was said:

"Proceedings for reinstatement, as by mandamus, must be timely brought or they will be barred by limitations or laches. Or the failure to assert his rights at the time may be a waiver of the right to reinstatement. Although the law contemplates and exacts a tender of services or a demand for reinstatement before bringing proceedings therefor, if the conditions render it obvious that such demand would have been futile, it will not be required."

The reason assigned by the relator for delay in instituting suit for reinstatement within the two year period was that a criminal prosecution was pending against him in the Criminal Court of Record of Dade

County, Florida, and within sixty days after its dismissal the suit at bar was filed. The judgment challenged requires the respondent to pay relator the sum of $5,890.00 and reinstate him to his original employment. Obviously the respondent was without knowledge of the claims or demands of the relator until suit was filed. He did not personally appear and demand reinstatement or advise in writing or press his salary claim within the two year period, but when discharged from the criminal prosecution he filed suit. The respondent during the interval, not only employed but paid another to discharge or perform the duties of Car Inspector, and to require it to pay the judgment under attack after having paid for the services rendered, at least appears inequitable. See 21 C. J. pages 219-225, pars. 217-220. The unreasonable delay by the relator is fatal to his right to recover in the case at bar.

The judgment appealed from is hereby reversed.

BROWN, C. J., and THOMAS, J., concur.

BUFORD, J., concurs specially.

BUFORD, J., concurring specially:

I think that the defendant in error did, by his conduct and lack of action as shown by the record, abandon his employment and after the lapse of time is estopped to claim compensation even if he was unlawfully ousted from his former employment and, therefore, I concur in the judgment of reversal.