45 So.2d 773
### CITY OF ANNISTON v. DEMPSEY.
7 Div. 41.

Supreme Court of Alabama.
March 2, 1950.

Rehearing Denied May 4, 1950.

598

Knox, Jones, Woolf & Merrill, of Anniston, for appellee.

Richard T. Rives, of Montgomery, and Richard B. Emerson, of Anniston, for appellant.

FOSTER, Justice.

This is an action at law by a policeman of the City of Anniston for the recovery of his salary as such during a period of time occurring subsequent to his discharge in violation of the civil service law applicable to Anniston, as found in sections 391–414, Title 62, Code.

In order to understand the nature of this suit, it is necessary to refer to another suit which he had against the City of Anniston reported in 251 Ala. 71, 36 So.2d 314, (see, also, City of Anniston v. Douglas, 250 Ala. 367, 34 So.2d 467). That suit was for salary during a period of suspension occurring from December 1, 1946 to January 15, 1947. It was held in that case and in the Douglas companion case, supra, that under the rules of the civil service commission of Anniston, the chief of police had no authority to suspend a policeman for a longer period than thirty days during any one year and since that suspension was for forty-five days, we held the policeman was entitled to recover his salary for the excess of fifteen days.

The present suit is for salary extending from February 18, 1947 to the date of the suit in the instant case, which suit was filed on July 26, 1948, and which was the same day on which the previous suit for the fifteen day period was finally concluded and the judgment paid. He worked on January 16, and 17th, 1947, and had a leave of absence from January 18th to February 18, 1947.

The situation involved in the present appeal could not be better stated than the statement of facts contained in appellant's brief, which is not disputed by the appellee and, therefore, will be taken as a correct statement of the facts. Rules of Practice in Supreme Court, rule 10, Code 1940, Tit. 7 Appendix.

"The evidence insofar as the issues involved in this appeal are concerned is not in dispute. Appellee duly became a member of the police department of the appellant in the year 1941 and was under civil service. He was a police officer on December 1, 1946. His pay was $200.00 per month. He did not work any for the appellant from December 1, 1946 through January 15, 1947, due to a suspension by the then acting head of the appellant's police department, one Cecil Miller. Appellee was told by the said Miller to come back to work on January 16, 1947. Appellee did come back to work on January 16, 1947 and worked two days, namely, January 16 and 17, 1947. Since January 17, 1947 the appellee has not performed any services whatsoever for the appellant. After working for the appellant on the dates of January 16 and 17, 1947, the appellee duly asked for and duly obtained from the said Cecil Miller two consecutive fifteen day leaves of absence, said leaves of absence being from January 18, 1947 to February 18, 1947. On February 15, 1947 J. L. Peek was reinstated as chief of police of the City of Anniston, and said Miller was ousted as the head of the police department of the City of Anniston. A few days before his second fifteen day leave of absence was up the appellee called on chief Peek and told him that his leave of absence would be up in a few days and that he was ready to go back to work. Peek's reply to the appellee was that he did not know anything about what had happened during his absence and that the appellee would have to straighten 'all this out' with Mayor Banks. The appellee called on Mayor Banks in his office that same afternoon (which was a few days prior to February 18, 1947) and told him the story of his leaves of absence, that

they would be up in a day or two and that he was ready to go back to work. Mayor Banks did not give any definite answer but told the appellee to see him the next day. The next day appellee went back and saw Mayor Banks and Mayor Banks told him to see him again in the next day or two. Again about the last day of appellee's leave he talked to Mayor Banks and told him that the end of his leave was up that day and that he had to know something then; that he was supposed to go back to work the next day. Mayor Banks told him to come back the next day, at which time something would definitely be worked out. On Friday after the appellee's said leave was up February 17, 1947, the appellee went back to see Mayor Banks again. The appellee asked Mayor Banks if he was going to let him go back to work or was he stalling or something. The appellee informed Mayor Banks that he wanted to know something, that he was there for a definite answer and he had to do something. The appellee told Mayor Banks that if he didn't give him a definite answer he was going to appeal to the Civil Service Board. Just a few days after February 17, 1947 the appellee talked with J. C. Sawyer, chairman of the Civil Service Board of the City of Anniston about his not being permitted to return to work. During this time the appellee consulted with the Civil Service Board of Anniston and was advised by it to consult with an attorney. Also around February 18, 1947, the appellee saw Mr. S. F. Street, one of the members of the Board of Commissioners of the City of Anniston, Alabama, and asked his help relative to being allowed to return to work on the police department of the appellant. Shortly after February 18, 1947 the said S. F. Street advised the appellee to take his matter up with the Civil Service Board and also to see a lawyer. The appellee consulted with Mr. Walter J. Merrill (his attorney in this present action) on or about March 4, 1947.

"On March 4, 1947 the appellee filed a suit in the Circuit Court of Calhoun County, Alabama, for his salary as a police officer of the appellant from December 1, 1946 through January 15, 1947, which was the period for which the appellee was suspended by Cecil Miller, as hereinabove mentioned. Mr. Walter J. Merrill represented the appellee in said suit filed on March 4, 1947 for his salary during said suspension from December 1, 1946 through January 15, 1947. On May 6, 1947 the appellee wrote a letter to the Civil Service Board of Anniston, Alabama. In said letter dated May 6, 1947 which the appellee delivered to the chairman of the Civil Service Board of Anniston, the appellee stated 'I went to Mr. Banks because he is the chief executive of the city and in charge of the police department. It is now clear that he does not intend to restore me to my position and I must appeal to you for help.' No charges were ever preferred against the appellee. The appellee was not paid any salary by the appellant for the period of February 18, 1947 through July 17, 1948.

"The said suit filed on March 4, 1947 by the appellee against the appellant was finally concluded in the Calhoun County Circuit clerk's office on July 26, 1948, when the appellant paid off the judgment as reduced by the Supreme Court of Alabama. * *

"The complaint was filed in the suit involved in this appeal on July 26, 1948, the same day on which the said suit filed March 4, 1947 was concluded by payment of final judgment, as reduced.

"Sometime during the aforesaid forty-five day suspension, from December 1, 1946 to January 15, 1947, the appellee became a partner with one Earl White in operating a filling station located in Anniston, Alabama, and continued as such partner with said White until sometime in February, 1947. After the appellee was not allowed to return to work as a member of the Anniston Police Department he went to work for a dry cleaning establishment where he has been employed ever since, making between $150.00 and $200.00 per month. The appellee took no official action with the Civil Service Board of Anniston other than writing it the aforementioned letter dated May 6, 1947. Nor did he demand at any time his pay from the appellant. The appellee never made any complaint whatsoever to the Board of Commissioners of the City of Anniston.

"The appellee throughout the period involved in this suit orally requested the assistance of the chief of police, J. L. Peek, various members of the Civil Service Board of Anniston, and other officers on the police force of the City of Anniston to assist him in getting restored to the Police Department of the appellant, but never once did he make known officially or otherwise to the Board of Commissioners of the City of Anniston, Alabama, his grievance or his request to be reinstated on the Police Department of the appellant.

"As stated at the outset in this statement of the facts, all of the aforesaid evidence is without dispute and all of the aforesaid evidence comes from the mouths of the witnesses called to the witness stand by the appellee.

"The only evidence which is in dispute (but which has no bearing whatsoever on the issues involved in this appeal) is that the evidence for the plaintiff showed that the plaintiff's grievance had been taken up with Mayor Banks in the presence of H. B. Glover, one of the three members of the Board of Commissioners of the City of Anniston, Alabama. The said H. B. Glover denied that anyone had ever discussed or taken up the appellee's grievance with Mayor Banks in his (H. B. Glover's) presence."

The evidence shows that during the time here involved the city did not appoint another to fill the place as in Walden v. Headland, 156 Ala. 562, 47 So. 79.

There is no provision in the civil service law for Anniston in express terms giving procedure for reinstatement of an officer unlawfully deposed from his position.

The defense made by the city depends on the effect of the delay in the assertion by court proceedings of appellee's rights for a period extending from February 18, 1947 to July 26, 1948. It is said in briefs that the defense is one of laches.

■ As we pointed out in several of our cases, a cause of action of this kind at law for money and nothing else when the liability is fixed by law as that of a public officer, is in *debt* and the statute of limitations is six years. Code 1940, Tit. 7, § 21.

Kirkland v. Jefferson County, 244 Ala. 69, 12 So.2d 347; City of Anniston v. Douglas, supra.

■ Laches is an equitable principle and is a defense only to suits in equity or to those proceedings at law which are controlled by equitable principles, such as mandamus. Oxford v. Estes, 229 Ala. 606, 158 So. 354; U. S. ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650; U. S. ex rel. Greathouse v. Dern, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250; 55 Corpus Juris Secundum, Mandamus, § 2, p. 18, notes 41, 42 and 43.

There are many cases where the question arose as to the effect of delay on the part of an officer who has been illegally discharged upon his right in respect to such office. In most of those cases the question arose in mandamus proceedings whereby the officer sought a reinstatement to his position as in our case of Faircloth v. Folmar, 252 Ala. 223, 40 So.2d 697. See, also, the full annotation on that subject in 145 A.L.R. beginning at page 767. Prejudice from delay is made a material circumstance in many cases. 145 A.L.R. 773; Faircloth v. Folmar, supra.

The right to mandamus is largely within the discretionary power of the court. This discretion is controlled by equitable principles and, therefore, when the question arises in that nature of proceeding the principle of laches applies in the assertion of the right demanded.

The cases cited by appellant, in which there was a claim made for salary where the principle was applied, were not in suits in common law form where there was a jury trial. Nicholas v. United States, 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133; Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136. Those were suits before the United States Court of Claims, in which there appears not to have been a jury, but a finding of facts by the court, and therefore the court as a trier of the facts determined under the circumstances the question of whether or not the plaintiff had acquiesced in the order of removal by reason of his unreasonable delay and activities thereafter occurring. The principle of

laches and acquiescence did not go to the delay in claiming his salary but in asserting his right to the position from which he had been unlawfully deposed.

So far as the question is here applicable, we do not think there is any reason to differentiate laches and acquiescence in determining whether he had lost the right to his position, although acquiescence was the term used in the suit at law for the recovery of salary in the case of Wilkinson v. City of Birmingham, 193 Ala. 139, 68 So. 999.

■ The question here is not whether the plaintiff's claim for salary is barred by limitations or laches, but whether he has any claim at all by reason of his acquiescence in his unlawful discharge as a policeman of the City of Anniston. Limitations at law and laches in equity ordinarily presuppose the continued existence of a cause of action which cannot be maintained on account of lapse of time, with other elements. Such lapse of time, whether it be controlled by the statute of limitations at law or laches in equity, ordinarily does not affect the existence of the right, but only the remedy for its enforcement. 13 Ala.Dig., Limitations of Actions, ☜165; Shockley v. Christopher, 180 Ala. 140, 60 So. 317. Prescription destroys the right of action. Oxford v. Estes, supra. .

The situation we are treating is not whether his claim for salary is barred by laches resulting from delay in suing for his salary, but whether he has a cause of action for the salary accruing in a position when he has lost the right to the position by acquiescence or laches. The laches here involved is co-extensive with acquiescence in its application. If he has lost the right to his position by laches or acquiescence, he has no cause of action for the salary. If he has not lost the right to his position by laches or acquiescence his suit for the salary which goes with it is not barred in a common law action until the statute of limitations takes effect.

The many cases referred to in 145 A.L.R. pages 767 et seq., and in appellant's brief are cases where it was the duty of the *court* to determine whether or not the officer's right to the office had terminated. There was no jury trial so far as we have observed. On the other hand, and in our case of Wilkinson v. City of Birmingham, supra, the same question was presented as here exists and in the same sort of action, and that is whether or not the office holder had acquiesced in his illegal discharge. It is not significant that the court did not use "laches" as the terminology applicable, but did use "acquiescence" and held that it was a question of acquiescence in his discharge. This went to the existence of his cause of action. It was not whether his cause of action was barred by any form of limitations or laches.

In addition to the authorities cited above, we refer on the general subject to the following cases and authorities cited in them. Landis v. Reeve, 106 Fla. 28, 142 So. 654; Renshaw v. State ex rel. Hickland, 149 Fla. 342, 5 So.2d 700.

The foregoing discussion is for the purpose of saying at this time that in this suit, as in the Wilkinson case, supra, the question of acquiescence and laches is one for the jury and not one of law for the court because the result is an inference of fact from the evidence and reasonable men could draw different conclusions, even though the evidence is without substantial conflict.

Appellant has argued two questions on this appeal, one is whether or not the affirmative charge should have been given to the appellant as requested in various forms, and the other is whether or not the verdict of the jury in favor of the plaintiff should have been set aside because contrary to the great preponderance of the evidence.

■■ We are clear to the view that in a suit of this kind when the trial is with a jury and when different inferences may reasonably be drawn from the evidence with respect to the question of acquiescence, the affirmative charge should not be given. This is such a case we think and, therefore, the first contention of appellant cannot be sustained.

■ We have set out in detail the statement of facts and the evidence in the case

as made by appellant for the purpose of determining whether or not the verdict of the jury should have been set aside and a new trial granted because contrary to the great weight of the evidence. We do not think it is necessary to discuss the facts with respect to that question, but it is our opinion that the trial court should not be reversed for overruling a motion for a new trial when we consider all the principles of law which govern such a review as well as those which apply to the theory of acquiescence.

Affirmed.

BROWN, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.