STURGIS, Chief Judge.
An alternative writ of mandamus issued out of the Circuit Court of Duval County on the relation of Harold D. Mann, the appellant, a former police officer of the City of Jacksonville, requiring the respondent appellees, in their relation as City Commissioners and constituting the City Commission of the City of Jacksonville, to pay the relator a sum of money alleged to be due for salary as such police officer or to show cause why a peremptory writ of mandamus should not issue in the premises. This appeal is prosecuted from an order quashing the alternative writ and finally dismissing the cause.
Relator’s petition and the alternative writ of mandamus based thereon reflect: That on January 14, 1953 the respondent city’s Chief of Police formally notified the City Commission by letter that on January 9, 1953 he suspended the five officers, including the relator, “after an investigation, and on advice of the Duval County Solicitor that he was filing criminal charges against them,” and requested the Commission to approve the suspensions until such time as disposition was made of the charges by the Duval County Criminal Court of Record; that on January 15, 1953 the City Commission formally approved the suspension; that on the same date as the letter the county solicitor of Duval County filed criminal informations against the relator and four of his fellow police officers, charging them with crimes arising out of an alleged robbery; that after that date sundry court proceedings were had on the several criminal charges involving the appellant, resulting in disposition without conviction of some of them, and on April 9, 1956 all criminal charges then remaining were on motion of respondent dismissed pursuant to Section 915.01 Florida Statutes, F.S.A., hence the relator was not convicted of any of the crimes with which he was charged and which formed the basis for his suspension on January 9, 1953; that on August 7, 1956 the Chief of Police filed with the City *197 Commission formal charges against the relator for his removal on the ground of conduct unbecoming an officer, specifying matters connected with the identical transactions upon which the mentioned criminal charges were based; that on the trial before the City Commission relator was found guilty and on September 10, 1956 was discharged from the Police Department. The petition does not contest the result of this trial.
The record reflects that the petitioner was at all times between the date of his suspension on January 9, 1953 and the date of the filing of the formal charges on August 7, 1956, ready, willing and able to discharge his duties as a patrolman, and asserts that since no formal charges were lodged against him prior to August 7, 1956, the suspension of January 9, 1953 was illegal and without legal effect. It is on that basis that he asserts the right to be paid the amount to which he would have been entitled for salary during that period.
The relator-appellant relies on his status as a civil employee of the city and the provisions of chapter 16866, Laws of 1935, establishing a civil service code for such employees. He also relies on the following provisions of the city charter:
“The members of the police force shall be appointed by the City Commission, and confirmed by the City Council, as now provided by law. The City Commission shall establish general provisions and requirements for the control and suspension of members of said department by the Chief of Police and other officers of said department but ino member who has served one year or more shall be removed from office without cause and without having been given a hearing by the City Commission on written charges for his removal from office. Upon the trial of the member of the police force for the removal from office, the City Commission may suspend him from office without pay, reduce him in work or remove him from office as they may deem just and proper.” Section 11, Chapter 7659, Acts of the Legislature of the State of Florida, 1917.
“The Mayor shall have the power to preserve the peace within the city; to bid in property for the city at all tax sales and under due process of law when the city is a party; to direct and control the police force under such rules and regulations as the City Commission may prescribe; to fill vacancies caused by sickness, absence or other disability of any city officer, and to suspend any city officer for misconduct in office or neglect of duty, reporting his actions with his reasons therefor in writing to the next meeting of the City Council for its approval or rejection. All suspensions by the Mayor of members or officers of the Police Department shall be reported to the City Commission within 5 days after the date of such suspension, together with such evidence, papers, o' documents as the Mayor may see fit to submit, for such action as the City Commission may deem advisable. It shall be the duty of the City Commission to hold a public trial upon such suspension as early as practicable, giving due notice to the suspended member or officer of the time and place of the trial; and in passing upon such suspensions, the City Commission may suspend such officers from office without pay, reduce them in work or rank, may enlarge or shorten the time of suspension and may if in their judgment the facts warrant, remove him from office. The Mayor shall not have the power to suspend members of the City Commission or of the City Council, or any officers under them, except members of the Police Department.” Chapter 23349, Laws of Florida, 1945.
In addition, appellant relied on the following provision of Rule 69 adopted by the City Commission pursuant to the city charter:
*198 “The Chief of Police may suspend any member of the Police Department for a period not exceeding 15 days for incompetency, neglect of duty, immorality, drunkenness, failure to obey orders, or any conduct interfering with the efficient operation of the Police Department, and such suspension for a period not exceeding 15 days shall be final. In the event a member of the Police Department is suspended by the Chief of Police for a greater period than 15 days, the facts of such suspension shall be certified in writing immediately to the City Commission, and a copy of the same shall be sent to the Mayor. In the event of suspension for a period greater than 15 days, the same shall be subject to the approval of the City Commission, and if the City Commission deems the charges against such officer of sufficient gravity, the officer so suspended may be tried for removal.
“The Chief of Police shall be on duty at all times, and in the event he shall be absent from the city, he shall designate the officer to act in his capacity. The officer so designated by the Chief of Police to act in his absence shall have all of the power and authority of the Chief of Police during the absence of the Chief of Police.”
In a well-reasoned opinion on which the order in question was based, the learned trial judge succinctly observed:
“Following disposition of those criminal charges approximately 4 months elapsed before the aforementioned removal charges were filed against Relator on August 7, 1956. At no time during the preceding 31 months of non-pay suspended status does the record disclose that Relator resisted or questioned his suspension, or took any steps to have himself reinstated, or perform any services for which he seeks compensation.
“Relator submitted himself to trial on those removal charges before the City Commission on September 4th to 10th, 1956. In the absence of any allegations to the contrary in the alternative writ it appears that Relator admits that he had a full, fair and valid trial on those removal charges before the City Commission; and as result of said trial the City Commission found him guilty thereof, and accordingly discharged him from the Police Department of said City. He apparently accepts his removal as a final adjudication, both legally accomplished and justified by the evidence presented before the City Commission. * * * ”
“ * * * Certainly no sound argument could be made that the misconduct of which Relator was found guilty of, and which was the subject of investigation by the Chief of Police when his suspension was imposed, did not furnish adequate and just cause for his suspension and removal as a police officer — civil service or other laws or rules notwithstanding.
“Here the Relator claims compensation for an interval of time following the commission of the acts of misconduct for which he was convicted. He rendered no service to the City during that time, and made no attempt to have himself reinstated or paid, and has waited for more than 4}4 years to pursue a claim for salary, which from aught that appears would have been paid out by the City to the successor who replaced Relator on the police force. So the spectacle presented here is one of a police officer convicted by the City Commission of contemptible complicity with corrupt crime while pretending to be on active duty as a police officer asking this Court to issue, at this late date, an extraordinary writ of mandamus to confer upon him the emoluments of a position, which he by his own misconduct had rendered himself unfit to fulfill.”
*199 Reversal is sought on two main grounds: (1) That under the City Commission’s Rule 69, supra, there is no authority for a police officer to be suspended for more than 15 days without the “facts being certified in writing to the City Commission” and the suspension approved by it, and that this was not done; (2) that the doctrine of laches should not have been applied because relator applied for the writ within a reasonable time after he was on September 10, 1956 discharged by the City Commission, and that it would have been useless to challenge the suspension prior to disposition of the criminal charges.
The first contention is without merit. The facts constituting the basis for suspension were certified in writing to the City Commission on January 14, 1953 (six days after the suspension) and the suspension was approved on January 15, 1953. As we have noted, the certificate recited that the suspension followed an investigation which developed that criminal charges were being filed against the police officer. The suspension was for the period until such time as disposition “is made of some of these charges against them.” The answer to this contention is clearly stated in the opinion of the trial judge, supra, which we adopt. In so concluding, we have not overlooked the case of Burklin v. Willis, Fla.App., 97 So.2d 129, reflecting the importance of complying with removal provisions.
There are overriding principles, however, which govern the issues on this appeal. It is well settled that the granting of the writ of mandamus is governed by equitable principles. State ex rel. Dixie Inn, Inc., v. City of Miami, 156 Fla. 784, 24 So.2d 705, 163 A.L.R. 577; State ex rel. Robert L. Turchin, Inc., v. Herin, Fla., 99 So.2d 578. Every proceeding in mandamus must be determined upon its own setting of facts and the peremptory writ will not be granted where it would serve no useful purpose, or where it would work a hardship or injustice or be detrimental of the public interest. See State ex rel. Long v. Carey, 121 Fla. 515, 164 So. 199, in which it was held that notwithstanding the fact that the relator had a clear legal right for which mandamus was the proper remedy, it is proper to deny the writ where its issuance would result in disorder, confusion, and disturbance. If issuance of the writ will not promote substantial justice or would lend aid to the effectuation of a probable injustice, the court may properly decline to grant the writ. State ex rel. Robert L. Turchin, Inc., v. Herin, supra.
Turning to appellant’s contention that the facts do not permit the doctrine of laches to apply, the situation here is not unlike that in Ladas v. Titus, Fla., 53 So.2d 323, 324, where an ex-policeman failed to institute proceedings for reinstatement until 17 months after dismissal. In affirming the trial court’s denial of the writ, Mr. Justice Terrell, speaking for the majority, aptly said:
“The courts over the country generally hold that when a reasonable excuse is not given for delay in starting legal proceedings for reinstatement under such circumstances as are related here, relief may be denied for laches, the reason being, public policy requires that government service be disturbed as little as possible, that two salaries be not paid for a single service and that unusual delay imposes additional and unnecessary burdens on the city to sustain its position. Renshaw, City Manager v. State ex rel. Hickland, 149 Fla. 342, 5 So.2d 700; Cone v. Benjamin, 157 Fla. 800, 27 So.2d 90.”
Applying that reasoning to this case, a much greater time elapsed in which appellant might have sought reinstatement.
In Landis ex rel. Quigg v. Reeve, 106 Fla. 28, 142 So. 654, 655, where the Chief of Police waited more than three years before protesting his removal from office, the Supreme Court said:
“Even when one is illegally removed from an office he must act with reasonable diligence to have himself reinstated. He cannot acquiesce for more *200 than three years during which another has been appointed to fill the vacancy caused by his removal, has performed the duties and drawn compensation, and then not be said to have waived or abandoned any right he may have had thereto.”
We do not overlook City of Daytona Beach v. Layne, Fla., 91 So.2d 814, holding that delay of seven months in seeking mandamus for reinstatement did not constitute laches because it was not shown that anyone was prejudiced or materially affected by the delay. The situation in the case on appeal is exactly the opposite of that premise.
The order entered by the trial court was correct in every respect.
Affirmed.
CARROLL, DONALD K., and WIG-GINTON, JJ., concur.