PER CURIAM.
The Alabama Insurance Guaranty Association (“AIGA”) appeals from a summary judgment entered by the Montgomery Circuit Court in which that court determined that, as a matter of law, the AIGA could not recover substantial sums of money that it had paid, on behalf of the Water Works and Sanitary Sewer Board of the City of Montgomery (“the Board”), to an injured employee of the Board following the insolvency of the Board’s workers’ compensa *89 tion insurer, Legion Insurance Company (“Legion”). Because we conclude that the trial court erred in concluding that the AIGA’s claim was time-barred, we reverse that court’s judgment and we remand the cause for further proceedings.
The legal proceedings leading to the judgment under review began in October 2009 when the AIGA sued the Board, seeking a declaration of the parties’ rights and liabilities under the AIGA’s enabling legislation, the Alabama Insurance Guaranty Association Act (“the Act”), which is codified in Chapter 42 of Title 27 of the Code of Alabama 1975. As a general rule, under the Act, when an insurer of risks that is licensed by this state is judicially declared insolvent and is ordered to be liquidated, any unpaid claims that are made against that insurer by residents of this state and that fall within the coverages in the policies issued by that insurer are “covered claim[s]” payable by the AIGA. See Ala. Code 1975, §§ 27-42-5(6) and 27-42-8(a)(1).[1] The parties’ dispute stems from a claim made by one of the Board’s employees, who was injured in a workplace accident in 2001; because that claim was covered by a workers’ compensation insurance policy issued to the Board by Legion, the Board’s claim was forwarded to the AIGA in 2003 upon Legion’s insolvency.
In October 2003, an AIGA claims examiner notified the Board by letter of Legion’s insolvency. In that letter, the AIGA indicated that the Board’s insurance claim might not fall within the definition of a “covered claim” in the Act. Under a 2000 amendment to the Act (Act No. 2000-743, Ala. Acts 2000), claims by an insured “whose net worth exceeds twenty-five million dollars ($25,000,000) on December 31 of the year” before an insurer’s insolvency were, for the first time, excluded from the scope of “covered claim[s]” under the Act, and the AIGA was extended a concomitant right to recover moneys it had paid on behalf of such a high-net-worth insured. The October 2003 letter directed the Board to provide the AIGA with documentation of the Board’s net worth. The Board failed to provide such documentation to the AIGA, prompting the AIGA claims examiner to send a second letter on November 10, 2003, to again seek that documentation and to warn that a failure to provide that documentation within 15 days might result in the Board’s loss of rights and coverages under the Act. However, exactly 15 days later, the Board and its employee settled all aspects of the employee’s workers’ compensation claim; the AIGA funded the $40,000 compensation settlement amount and has since paid for the employee’s medical benefits.
In January 2004, the AIGA claims examiner again contacted the Board, this time by sending a facsimile transmission indicating that the AIGA would need a response to “our letter” (presumably, a reference to the AIGA’s November 10, 2003, letter). The Board did not respond to the facsimile transmission. There is no indication in the record that any further action was taken by the AIGA for a period of over five years after that facsimile message was sent as to the payment of the Board’s insurance claim.
Pursuant to Act No. 2009-716, Ala. Acts 2009, which became law in May 2009, certain amendments to the Act went into effect on August 1, 2009. Among the changes made by the legislature was the addition of provisions to the Act under which (1) the AIGA was expressly empowered to request net-worth information *90 from insureds and claimants; (2) the AIGA was expressly authorized, upon any refusal of insureds or claimants to provide requested financial information, to deem that insured or claimant a “high net worth insured”; (3) a refusal by an insured to provide requested financial information to the AIGA would give rise to a rebuttable presumption in judicial proceedings that the insured’s net worth was greater than $25,000,000; and (4) a court determining that an insured that had refused to provide financial information to the AIGA was a high-net-worth insured would be authorized to award' attorney fees and costs to the AIGA. Ala.Code 1975, § 27-42-ll(g) and (h). The AIGA, apparently anticipating the impending effect of the amendments to the Act, notified the Board by a letter dated June 18, 2009, that the Board appeared to be a high-net-worth insured; the AIGA requested reimbursement of all moneys paid to satisfy the employee’s workers’ compensation claim against the Board. The Board apparently did not receive that letter until early September 2009, after the amendments had taken effect; the Board, in a letter replying to the AIGA, denied liability, contending that the applicable statute of limitations barred any i'eimbursement claim.
On October 30, 2009, shortly after the Board had denied the AIGA’s reimbursement request, the AIGA brought its action; the AIGA sought, among other things, a judgment in the amount of $49,135.61 plus attorney fees and costs. The Board filed an answer denying liability and asserting, among other things, that the applicable statute of limitations barred the AIGA’s reimbursement claim and that the portion of the 2009 amendments to the Act allowing recovery of attorney fees was unconstitutional as applied to the Board.[2] Each party filed a summary-judgment motion; in its brief in support of its motion, the Board “request[ed] that [the trial court] ... apply a two-year statute of limitations and render summary judgment in [the Board’s] favor as to all claims pending against it that seek to collect money from the Board for [sums] paid by [the] AIGA prior to October 20, 2007.” The parties jointly requested that the trial court deem the case submitted on the cross-motions. The trial court granted the Board’s summary-judgment motion and awarded the AIGA a judgment of only $1,092.03 plus court costs {i.e., the amount of medical benefits paid by the AIGA on behalf of the Board’s injured employee during the two years preceding the institution of the AIGA’s action); the Board then paid the amount of that judgment into court. The AIGA appealed to this court, which has appellate jurisdiction based upon the amount of the judgment involved. Because the trial court’s judgment was based upon the documentary evidence submitted by the parties in connection with their cross-motions for a summary judgment, we afford the trial court’s judgment no presumption of correctness. See Continental Elec. Co. v. City of Leeds, 473 So.2d 1056, 1058 (Ala.Civ.App.1984), aff'd, 473 So.2d 1060 (Ala.1985).
The primary dispute between the parties, as evidenced by their appellate briefs, concerns the applicable statute of limitations. The Board contends that the trial court properly applied a two-year statute of limitations to bar the large majority of the AIGA’s reimbursement claim, averring that the reimbursement claim accrued upon the AIGA’s initial payment of moneys on the Board’s behalf in November 2003 and that the AIGA’s claim is in the nature of a claim for either a statutory “penalty” or a tort claim not specifically enumerated *91 by the legislature in Chapter 2 of Title 6 of the Code, so as to be barred after two years have elapsed after its accrual. See Ala.Code 1975, § 6 — 2—38(j) and (l).[3] The AIGA contends that its claim is instead one governed by a six-year statute of limitations (see Ala.Code 1975, § 6-2-34(5)[4]) and that, regardless of which limitations statute applies, the AIGA’s claim did not accrue until the AIGA’s receipt of information permitting “discovery” of the fact that the Board was a high-net-worth insured (a “discovery[4]’ that purportedly occurred in 2009). Because the AIGA filed its civil action in October 2009, less than six years after indemnifying the Board as to its employee’s workers’ compensation claim in November 2003, the threshold material question is which of the two limitations statutes, § 6-2-34 or § 6-2-38, governs the AIGA’s reimbursement claim.
To properly answer that question, we must assess the nature of the AIGA’s reimbursement right. As we have noted, the Act was amended in 2000 so as to exclude, for the first time, claims asserted by insureds having a net worth of over $25,000,000 from the scope of AIGA’s indemnity responsibilities. See former § 27-42-5(4), Ala.Code 1975 (provision in effect from 2000 to 2009 defining “covered claim” under the Act). Likewise, the Act was amended in 2000 so as to extend to the AIGA “the right to recover from ... [a]n insured whose net worth ... exceeds twenty-five million dollars ... and whose liability obligations, including obligations under workers’ compensation insurance coverages, to other persons are satisfied in whole or in part by the payments” made by the AIGA on that insured’s behalf. Ala.Code 1975, former § 27-42-ll(d) (in effect from 2000 to 2009). Thus, under the Act as it was in effect in November 2003, once a payment was made by the AIGA on behalf of a high-net-worth insured, the AIGA’s right to recover that payment immediately vested; there is no indication in the Act itself that the AIGA’s recovery right was in any way conditioned upon the status of the AIGA’s knowledge concerning whether a particular insured had a high net worth.
The right to recover bestowed by the legislature upon the AIGA under the Act as it read in 2003 is not identified by the Act as a cause of action sounding in tort or in contract, nor is it labeled as a penalty to be imposed by a court upon an insured for having a relatively high net worth. Rather, it is a statutory right permitting the recovery of a liquidated sum: an amount equal to what the AIGA has paid on behalf of a high-net-worth insured. Our review of applicable Alabama law leads us to agree with the AIGA that the six-year statute of limitations provided in Ala.Code 1975, § 6-2-34, upon which the AIGA relies, does indeed apply in this situation. The AIGA’s reimbursement claim is in the nature of a common-law action of debt (as opposed to assumpsit upon an express or implied contract) for the recovery of money provided by law. See City of Anniston v. Douglas, 250 Ala. 367, 371, 34 So.2d 467, *92 471 (1948) (“when a statute creates a liability to pay money and prescribes no particular form of action for its recovery, an action of debt is the appropriate remedy”), and City of Anniston v. Dempsey, 253 Ala. 597, 601, 45 So.2d 773, 776 (1950) (“a cause of action ... for money and nothing else when the liability is fixed by law ... is in debt and the statute of limitations is six years”; citing Douglas and Ala.Code 1940, tit. 7, § 21 (now codified as Ala.Code 1975, § 6-2-34)); see also State Highway Dep’t v. Oglesby, 530 So.2d 846, 848 (Ala.Civ.App.1988) (retired state employee’s claim for recovery of unpaid statutory per diem allowance held to be in debt and subject to six-year limitations period set forth in § 6-2-34). Although we agree with the Board that in this case there is no document, such as a promissory note, that evidences the existence of a contractual debt owed to the AIGA, “[a]n action of debt may or may not be based on contract” (Douglas, 250 Ala. at 370, 34 So.2d at 470), and the AIGA’s right of recovery under the Act as it was in effect in 2003 is no less subject to § 6-2-34 for the lack of such an express agreement.[5]
Based upon the foregoing facts and authorities, we conclude that the AIGA’s reimbursement claim against the Board was timely brought in October 2009, less than six years after the AIGA made its first payment on behalf of the Board as a result of Legion’s insolvency. Thus, the trial court erred in determining, as it did, that the AIGA’s reimbursement claim against the Board was barred as a matter of law to the extent that it sought moneys paid more than two years before the AIGA brought its action in October 2009. As to that aspect of the trial court’s judgment, we reverse, and we remand the cause to the trial court for further proceedings consistent with this opinion.[6]
The AIGA further contends that the trial court erred in failing to award it attorney fees pursuant to subsection (h) of Ala. Code 1975, § 27-42-11, as amended in 2009. Based upon the trial court’s determination that the AIGA was not entitled to recover the large majority of its payments on behalf of the Board to the employee, the trial court could properly have denied a fee award on the basis that the AIGA had not actually prevailed in the action without reaching the preliminary constitutional question raised by the Board concerning whether the 2009 amendment could properly be applied retroactively to the parties’ dispute. Our reversal of the trial court’s judgment as to the AIGA’s reimbursement claim, however, necessarily implicates the correctness of the trial court’s denial of a fee award; we thus reverse the trial court’s judgment as to *93 that issue as well, and we remand the cause for that court, in the first instance, to consider whether the 2009 amendment to § 27-42-11 applies retroactively to the parties’ dispute and, if the amendment is held to be applicable, to determine whether the AIGA is entitled to a fee award as a component of any new judgment on the merits entered on remand from this court.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., dissents, with writing.

. Although the liability of the AIGA generally does not extend to the first $100 of covered claims or exceed $150,000, workers’ compensation insurance claims are exempt from those limitations. See Ala.Code 1975, § 27-42—8(a)(1).

. The attorney general filed an answer and waived further participation in the action.

. "(j) All actions qui tam or for a penalty given by statute to the party aggrieved, unless the statute imposing it prescribes a different limitation, must be brought within two years.
[[Image here]]
"(I) All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.”

. "The following must be commenced within six years:
[[Image here]]
"(5) Actions for the recovery of money upon a loan, upon a stated or liquidated account or for arrears of rent due upon a parol demise.”

. We note here the Board's citation of a noted treatise on the law of damages for the proposition that a two-year statute of limitations applies to "an action based upon a liability created by statute ... unless some other time limit is mentioned in the statute creating it." Jenelle M. Marsh and Charles W. Gamble, Alabama Law of Damages § 11:25 (5th ed.2004). This statement appears to be an overbroad textual gloss upon the holding in Universal Credit Co. v. Clay County Trading Co., 235 Ala. 577, 180 So. 259 (1938), which concerned a claim for a true statutory penalty for failing to record a satisfaction of a chattel lien (i.e., a claim as to which the predecessor of Ala.Code 1975, § 6 — 2—38(j), would have applied by its terms). In contrast, Douglas, Dempsey, and Oglesby clearly hold that a six-year limitations period applies to claims based upon statutory liabilities that do not involve penalties.

. We decline the AIGA’s request to simply render a judgment in its favor because, notwithstanding this court’s conclusion as to the applicable statute of limitations, the AIGA did not demonstrate at the summary-judgment stage that none of the affirmative defenses asserted by the Board has any factual or legal basis.