This is a business license tax case.
At issue is the business license schedule of the city of Leeds as applied to businesses located outside the corporate limits but within the police jurisdiction of Leeds.
The statutory authority for such license taxes is section11-51-91, Ala. Code (1975), which allows municipalities to collect taxes to defray the cost of municipal services provided to businesses in their police jurisdictions.
In the judgment appealed from, the learned trial judge found that the license fees were not arbitrarily fixed by the city of Leeds, but instead resulted from a reasonable effort on the city's part to relate the amount charged to the reasonable cost of municipal services provided. After having reviewed the record and the cases cited in briefs, we must reverse.
The business license tax statute has been the subject of several recent cases before this court and the Alabama Supreme Court. See City of Hueytown v. Burge, 342 So.2d 339 (Ala. 1977);Atlantic Oil Co. v. Town of Steele, 283 Ala. 56, 214 So.2d 331
(1968); State v. Sanderson Equipment Co., 380 So.2d 298
(Ala.Civ.App. 1979), cert. denied, 380 So.2d 299 (Ala. 1980);Town of Newville v. Price, 372 So.2d 1314 (Ala.Civ.App. 1979). Under that statute, a municipality may assess a license tax against businesses located outside the corporate limits of the municipality but within the police jurisdiction, not to raise revenue either directly or indirectly, but instead to reasonably reimburse the city for supervision of the businesses so located, including police and fire protection. City of Hueytown v. Burge,342 So.2d 339 (Ala. 1977). When such an assessment is made, it is *Page 1058 
presumed to be a valid exercise of the police power of the municipality, and not an attempt to raise general revenue, unless it is shown that the city has manifestly abused its power or invalidity appears from the face of the ordinance itself. Id.
Because the levy under the statute is presumptively valid, the challenger bears the burden of establishing affirmatively by competent evidence that abuse or invalidity exists. Id. The courts will not scrutinize the amount of the license fee too narrowly when it reflects a sincere effort on the part of the city authorities to fix the fee on a basis justified under law.Hawkins v. City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947). However, when it appears that arbitrary figures were fixed for such license fees and that no effort was made to relate the fees charged to the reasonable cost of municipal supervision, it follows that the imposition of the taxes on police jurisdiction businesses was for general revenue purposes, an impermissible course of municipal action. City of Hueytown v. Burge,342 So.2d 339 (Ala. 1977).
Hawkins v. City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947), set out guidelines municipalities should follow in fixing their license taxes:
 "Cities in fixing their schedule of licenses should anticipate the amount to be needed for police, fire and sanitation, and other supervision, including use of its facilities, both within the city and in the police jurisdiction. And then allocate a reasonable amount of that for the police jurisdiction. And estimate the proper proportionate amount of that which should be chargeable to the various businesses there subject to a license tax by the city, so that each such business then licensed shall as near as possible pay an amount properly chargeable to its supervision and police protection, all of them together approximately covering the amount of the expense of the city for such purposes properly allocated to the police jurisdiction.
". . . .
 ". . . Cities should by this time have learned that they cannot license for general revenue purposes businesses maintained solely in the territory of their police jurisdiction outside the city limits. Section 733, title 37 (pocket part), Code, does not confer on cities a right to assess licenses for such business equal in all instances to one-half the amount charged and collected as a license for like business within the corporate limits of the city. But that is the ceiling over which they cannot go. But under that ceiling the Constitution declares in effect that it must not exceed a reasonable sum as a charge for the supervision of that business."
Id. at 238-39, 30 So.2d at 663. A similar guideline was contained in Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489,175 So. 289 (Ala. 1937): "[W]hen a city is exercising a right to tax only for the police supervision of a class of business, that sort of business must be classified in accordance with its merit rating in respect to the necessity for police supervision." Id.
at 493, 175 So. at 292.
The case below was tried on depositions, stipulations, and other written evidence after the parties had filed cross-motions for summary judgment. Accordingly, the ore tenus rule has no application and we do not afford the usual presumption of correctness to the trial court's findings. Roberts v. FritIndustries, 437 So.2d 1038 (Ala.Civ.App. 1983).
Our review of the evidence reveals the following: Pursuant to section 11-51-91, Ala. Code (1975), the city of Leeds enacted an ordinance which requires businesses operating outside the corporate limits but within the police jurisdiction of Leeds to procure a license. See Section 6-2, Code of Ordinances, City of Leeds, Alabama. The amount of the tax paid for such license is set at one-half the amount to which such business would be subject were such business carried on within the corporate limits of the city. The amount such business would be subject to were it carried on within the corporate limits is set out in *Page 1059 
section 6-1 of the ordinance code. (Section 6-1 establishes various classifications of businesses within the Leeds corporate jurisdiction according to the business activity in which the business is engaged.)
Leeds renders three types of municipal services to its police jurisdiction. Police service includes patrolling, dispatches to specific complaints, and detective work. Fire service includes inspection services and answers to fire calls. Ambulance service is also available.
For each of the two years here at issue (1981 and 1982), Continental Electric Company was classified as a "manufacturer" under section 6-1. The license fee for a manufacturer is calculated by taking a designated percentage of the previous year's gross sales. Thereafter, the amount is reduced by one-half for businesses operating in the police jurisdiction. As a result of this calculation, Continental paid, under protest, a business license fee of $2,681 for the license year 1981 and $2,661 for the license year 1982. Of the more than two dozen businesses and utilities operating in the police jurisdiction, Continental, Jones Manufacturing Company, Alabama Power Company, and Alabama Gas Company remitted the largest amounts to Leeds. The remaining businesses paid less than $400 apiece.
Prompted by the Hueytown case, City of Hueytown v. Burge,342 So.2d 339 (Ala. 1977), for the license year 1981, Leeds, by ordinance # 453 (enacted three months after license taxes were due and payable) attempted to relate police jurisdiction business license fees to the projected cost of supervision of the entire police jurisdiction for 1981. For the license year 1982, Leeds, by ordinance # 466 (passed five months after license taxes were due and payable) attempted to relate 1982 police jurisdiction business license fees to the projected cost of supervision of its entire police jurisdiction for 1982. These projected costs were figured by keeping a record of all police, fire, and ambulance calls made in the police jurisdiction, by estimating the cost of each call, and by keeping up with the miles patrolled in the police jurisdiction. For both years, the ordinances confirmed that the estimated cost of providing fire, police, and ambulance services to the entire police jurisdiction was almost double the amount realized through the collection of business license fees.
As indicated above, several depositions were contained in the evidence considered by the trial court. These depositions of City Clerk Gladys Prentice, Police Chief C.H. Bailey, and Fire Chief E.C. Kennedy contain the following evidence on the crucial issue of the city's effort to reasonably relate license taxes to the cost of supervisory services: Mrs. Prentice, who has served the city over thirty-two years, testified that the city has used the same business license schedule ever since she has been working with the city. In response to questions by Continental's counsel, she answered the following: that the city had never attempted to segregate estimates on services rendered to police jurisdiction businesses from services rendered to police jurisdiction residents or unoccupied police jurisdiction lands; that the city had never determined whether the cost of supervising Continental was different from the cost of supervising other businesses; that the city had never attempted to classify police jurisdiction businesses according to their particular police, fire, and ambulance supervisory needs; and that the city has never attempted to determine if the license tax levied against Continental was reasonable to compensate the city for supervisory services rendered to that company. Police Chief Bailey, in response to questions by Continental's counsel, testified that only about ten percent of calls made to the police jurisdictions are to businesses and that Continental's police supervision needs are minimal, involving mainly patrolling and security protection. Fire Chief Kennedy testified that less than ten percent of the police jurisdiction ambulance and fire runs are to businesses, and that to his knowledge the city has never attempted to estimate the cost of rendering fire protection to businesses alone or classified businesses *Page 1060 
according to their respective fire risks although it would be easy to do so.
In reviewing this evidence the trial court correctly observed that "no calculation had been made by the council or city officials of costs for city services to any particular business or classification of business in the police jurisdiction." Because the applicable test is whether the tax is based upon an effort to relate the fee charged to the reasonable cost of supervision, the trial court erred in holding the license fee valid despite this crucial fact finding. City of Hueytown v.Burge, 342 So.2d 339 (Ala. 1977); Atlantic Oil Co. v. Town ofSteele, 283 Ala. 56, 214 So.2d 331 (1968); Alabama Power Co. v.City of Carbon Hill, 234 Ala. 489, 175 So. 289 (Ala. 1937); Statev. Sanderson Equipment Co., 380 So.2d 298 (Ala.Civ.App. 1979),cert. denied, 380 So.2d 299 (Ala. 1980); Town of Newville v.Price, 372 So.2d 1314 (Ala.Civ.App. 1979). Accordingly, we must reverse.
We would note, though, that in calculating future license fees, Leeds need not follow the very restrictive guidelines that Continental urges in brief — strictly limiting the fee charged by the number of actual calls made to the business in prior years. See, e.g., Hawkins v. City of Prichard, 249 Ala. 234,30 So.2d 659 (1947). Alabama case law is clear that cities may consider the value of standby facilities maintained for the protection of the police jurisdiction businesses, regardless of the businesses' actual use of these facilities. Id.; City ofAndalusia v. Fletcher, 240 Ala. 110, 198 So. 64 (1940).
The judgment of the trial court is due to be reversed.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.