688 So.2d 271 (1996)
SAFEWAY INSURANCE COMPANY OF ALABAMA, INC.
v.
J.B. THOMPSON and Be Be Pierce.
2950602.
Court of Civil Appeals of Alabama.
December 31, 1996.
Tom E. Ellis and Ronald C. Wall, Jr. of Kracke, Thompson & Ellis, Birmingham, for appellant.
Garve Ivey, Jr., of King, Ivey & Junkin, Jasper, for appellee.
PER CURIAM.
Safeway Insurance Company of Alabama, Inc., appeals from the trial court's order issuing writs of garnishment against it for an amount exceeding the coverage limits of the insurance policy involved in this case.
Briefly, the facts leading to the garnishments are as follows. On April 29, 1991, Rodney Steven Harbin was driving an automobile he had borrowed from Kenneth Prescott and his daughter, Kim, when he was involved in an accident involving two other cars driven by J.B. Thompson and Be Be Pierce. Safeway, the company that insured the Prescotts' car, was notified of the accident within two weeks. After investigating the accident, Safeway paid for the damage to the Prescotts' car and agreed to pay a subrogation interest to State Farm Insurance Company for damage done to Pierce's car. Alice Early, the Safeway claims adjuster who handled this case, testified that she believed Harbin was liable and that the insurance company should have paid the claims on Thompson's car.
Safeway did not pay for the personal injuries suffered by Thompson and Pierce, although Early testified that she recommended to her supervisor that Safeway also pay those claims. The record shows that before either Thompson or Pierce filed a lawsuit in this case, the attorney representing both of them contacted Early and made a demand for $17,500 for Thompson's injuries. The record *272 shows that that amount was within the policy limits. Later, the attorney also offered to settle Pierce's claim within the limits of the liability policy. Despite its own claims adjuster's recommendation that the claims be paid, Safeway did nothing.
A year after the accident, in April 1992, Thompson and Pierce sued Harbin. Harbin failed to answer. The trial court, on application by Thompson and Pierce, entered default judgments against Harbin in June 1993. The same day the default judgments were entered, Harbin filed a Chapter 7 bankruptcy petition. Harbin received a discharge in bankruptcy in September 1993. Thompson and Pierce then filed a motion with the bankruptcy court asking it to reopen Harbin's case to allow them to seek relief under the Safeway insurance policy. The bankruptcy court granted the motion and allowed Thompson and Pierce to pursue the state court action, but only to the extent of coverage available from the insurance policy.
In May 1994, the trial court held a hearing for Thompson and Pierce to prove damages. After the hearing, the trial court again entered default judgments against Harbin, awarding Thompson $10,000 and awarding Pierce $100,000. In September 1994, Thompson and Pierce filed processes of garnishment against Safeway for the amounts of the judgments. In October 1994, Safeway answered, denying that it was indebted to Harbin. The trial court held an ore tenus hearing to determine the validity of the garnishments, after which it overruled Safeway's objection to the garnishments and ordered that they be served on Safeway immediately. Safeway appeals.
Safeway contends that the trial court misapplied the law, that the judgment is not supported by the evidence, and that the trial court's judgment is plainly and palpably erroneous. Specifically, Safeway argues, the evidence shows that Harbin failed to cooperate and failed to provide it with a copy of the lawsuit and with other legal papers. Therefore, Safeway claims, it is due to be relieved of liability on the claims against Harbin.
The trial court was presented with ore tenus testimony at the hearing to determine the validity of the garnishments.
"The standard of review applicable to judgments based on ore tenus evidence is well established. `Where a trial court has heard ore tenus testimony, as in this case, its judgment based on that evidence is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong.' McInnis v. Lay, 533 So.2d 581, 582 (Ala.1988).... Furthermore, `[t]his Court ... will affirm the trial judge's decision if, under any reasonable aspect, it is supported by any credible evidence.' Chism v. Hicks, 423 So.2d 143, 144 (Ala.1982) ... (emphasis added). Finally, `this court cannot overturn [the] finding[s] of fact by the lower court unless the decision is unsupported by the evidence ... and is plainly and palpably erroneous.'"
Humphries v. Whiteley, 565 So.2d 96, 101-02 (Ala.1990); Meadows v. First National Bank of Ashford, 568 So.2d 303, 304 (Ala.1990). In its judgment, the trial court found that Safeway had notice of the claims against Harbin, had received copies of the lawsuits Thompson and Pierce had filed against Harbin, and knew that its own claims adjuster had recommended that it pay the claims. In finding that Safeway's defenses to the garnishments were without merit, the trial court wrote, "Safeway, with all this knowledge and advice, acted or reacted like the proverbial tar baby from the Tales and Fables of Uncle Remus; it said nothing and did nothing and cannot now complain."
Safeway's primary argument revolves around Harbin's failure to send it the suit papers. If we isolated the fact that Harbin, as the insured, did not provide Safeway with a copy of the suit papers and we did not consider it in context, then we agree Safeway would be entitled to relief from liability. Watts v. Preferred Risk Mutual Insurance Co., 423 So.2d 171 (Ala.1982) (holding that the insurance company was entitled to relief from liability because of the insured's failure to comply with policy's provision that he must forward suit papers to the insurance company); American Fire & Casualty Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579 *273 (1959). However, looking at only one isolated fact is misleading when the big picture reveals a different story. Therefore, this court will examine the entire record when considering the arguments of the parties on appeal.
From our review of the record, it seems that both Harbin and Safeway tried to ignore this case while Thompson and Pierce pursued it. The Prescotts, who purchased the insurance policy from Safeway, also took what action was required of them in an effort to resolve this case. The Prescotts immediately notified Safeway of the accident, and Early, Safeway's claims adjuster, testified that she received full cooperation from the Prescotts during the course of the accident investigation.
Safeway received timely notice of the accident. Despite the recommendation of its own claims adjuster to pay all the claims in this case, and despite having offers to settle the case within the policy limits before the suits were filed, Safeway did nothing. Once suits were filed against Harbin, the attorney for Thompson and Pierce provided Safeway with copies of the complaints. Safeway does not deny that they received suit papers from the plaintiffs' attorney. Safeway presented evidence that it mailed a certified letter to Harbin requesting that he send Safeway any suit papers he had received, but that Harbin never responded. Harbin testified that he did not remember whether he received a letter from Safeway. We point out that the Prescotts were not sued, and so they had nothing to forward to Safeway. Mrs. Prescott testified that she was aware that Harbin was being sued and that she had told him to contact Safeway, but that she did not have a copy of his suit papers to forward to the company.
Safeway relies heavily on Watts v. Preferred Risk Mutual Insurance Co., 423 So.2d 171 (Ala.1982), in support of its argument that it has no liability. However, this case is distinguishable from Watts. In that case, the driver of the insured vehicle claimed to have told his insurance agent about the suit about two months after the accident took place. However, from reading the case, it does not appear that the insurance company ever received any suit papers from any source. Id. Furthermore, the evidence in that case showed that a lawsuit was not filed until a year after the accident; therefore, there was no lawsuit at the time the driver claimed to have told his agent of the suit. Id. at 173-74.
"The purpose of the provision that the insured immediately forward legal process to the insurer is to afford the insurer an opportunity to control litigation." Watts, 423 So.2d at 173; Brown v. State Farm Mutual Automobile Casualty Insurance Co., 506 F.2d 976 (5th Cir.1975). In this case, there is no dispute that Safeway was given copies of the lawsuits. Given the peculiar facts of this case, we do not see what difference it makes whether Harbin or the plaintiffs provided Safeway with a copy of the suit. As discussed earlier, the Prescotts were not a party to the suit and did not have a copy of the suit, so they had nothing to provide to Safeway. Safeway was in a position to take control of the litigation in this case; it could have filed an answer, or, in light of the unusual facts of this case, it could have requested a declaratory judgment to clarify its responsibilities and liability in this case. However, Safeway did nothing.
We note that in Watts the insurance company, which had no actual notice of the underlying lawsuit, filed an action for a declaratory judgment in which the insurance company asked the trial court to hold it free from any liability for the default judgment against the driver. Safeway, which had actual copies of the lawsuit against Harbin from the outset of this litigation, failed even to seek a declaratory judgment determining liability. Instead, as the trial court pointed out, Safeway did nothing in this case until it was faced with the writs of garnishment.
We hold that the evidence presented in this case supports the trial court's findings that Safeway acted like "the proverbial tar baby." Despite the recommendation of its claims adjuster to pay all the claims; despite the opportunity it had to settle the claims within the limits of the Prescotts' policy; and despite its knowledge that Thompson and Pierce planned to sue Harbin for damages, *274 Safeway did nothing. Once the suit was filed, not only was the insurance company aware that Harbin had been sued, but it was provided with copies of the lawsuits by Thompson and Pierce's attorney.
Under these facts, to allow Safeway to avoid liability simply because it did nothing for so long would not only be unfair to the plaintiffs, who did all they could to get Safeway involved, but would also be a gross manipulation of the law. The requirement that an insured defendant provide the insurance company with suit papers is meant to allow the insurance company to control the litigation. It is not meant to allow insurance companies to escape liability simply by "waiting out" people like Harbin who seem likely to let matters slide, especially since he was not injured, it was not his vehicle that was damaged, and he was essentially judgment-proof, even before filing for bankruptcy protection.
Under the facts of this case, the trial court did not err in refusing to accept Safeway's arguments that it should not be liable for the default judgments entered against Harbin and in issuing writs of garnishment against Safeway.
Safeway also argues that it should have been relieved of liability for the default judgments against Harbin because, it says, Harbin had colluded with Thompson and Pierce. However, we find nothing in the record to support Safeway's contention that Harbin was acting in collusion with the plaintiffs.
Safeway also argues that the trial court erred in issuing writs of garnishment in excess of the Prescotts' policy limits. We agree. The limits of liability under the policy are as follows: for bodily injury, $20,000 for each person, $40,000 for each occurrence, and, for property damage, $10,000 for each occurrence. However, the trial court issued one garnishment against Safeway for $100,174, the amount of the default judgment entered against Harbin in favor of Pierce, plus costs, and one for $10,174, the amount of the default judgment entered against Harbin in favor of Thompson, plus costs.
Thompson and Pierce's argument that Safeway is liable for the entire judgment amount is based on the theory that an insurer may be held liable for an amount greater than its policy limits if it is found to have acted negligently or in bad faith in failing to settle a claim. However, because there were no claims of negligence or bad faith against Safeway in this case, this argument is without merit.
In addition, the relief granted by the bankruptcy court permitted the plaintiffs to pursue a state court claim against Harbin only to the extent of insurance coverage. To allow the plaintiffs to recover more than that amount would be contrary to the bankruptcy court's order.
Furthermore, in a similar case, the Alabama Supreme Court held that, in obtaining a writ of garnishment against the defendant's insurance company, the judgment creditor was limited to recovering no more than the insured's policy limits. In St. Paul Fire & Marine Insurance Co. v. Nowlin, 542 So.2d 1190 (Ala.1988), a judgment creditor had obtained a writ of garnishment against the defendant's insurance company that exceeded the defendant's policy limits. The Alabama Supreme Court held that the judgment creditor's rights against the insurance company were dependent upon the rights of the insured against its insurer under the policy. Id. at 1194.
Thompson and Pierce had no greater rights to recover under the contract than Harbin would have, i.e., they had no right to collect more than the limits of the Prescotts' Safeway policy. Because Thompson and Pierce, as judgment creditors, could recover only to the extent of the insurance coverage, the trial court erred in issuing a writ of garnishment against Safeway that exceeded the policy limits. Therefore, we reverse that portion of the judgment issuing writs of garnishment against Safeway for the full amounts of the default judgments entered against Harbin, and remand this cause for the trial court to issue the writs for amounts within the policy limits.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*275 ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.
CRAWLEY, Judge, concurring specially.
I concur specially to note the applicable language of the insurance policy. In pertinent part, the policy states:
"PART ALIABILITY COVERAGE
"INSURING AGREEMENT
". . . .
"It is further understood and agreed that we are not obligated to pay, and shall not pay, attorney's fees for any legal or investigative work, unless such attorneys are selected by us; it is further understood and agreed that we are not obligated to pay, and shall not pay, any sum which the covered person may be legally obligated to pay as a result of a lawsuit unless we received actual notice of said suit before any judgment had been entered in said suit.

". . . .
"PART EDUTIES AFTER AN ACCIDENT OR LOSS
"GENERAL DUTIES
"We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
"A person seeking coverage must:
"1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
"2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss."
(Emphasis in original.)
It is undisputed that neither Prescott nor Harbin forwarded any lawsuit papers to Safeway; however, counsel for Pierce and Thompson forwarded a copy of the suit papers to Safeway eight months after the suit was filed against Harbin and approximately six months before the trial court entered a default judgment against Harbin. I would not hold that the forwarding of suit papers by the opposing counsel is sufficient notice to overcome a requirement for the insured or covered person to send those papers to the insurer in all cases. In this case a claims adjuster for Safeway had investigated the accident and made recommendations regarding payment of the claims. Safeway also received suit papers several months before the entry of default, which is "actual notice of said suit" as contemplated by the policy language. Therefore, I would also conclude that the trial court correctly entered garnishments against Safeway.