On December 25, 1997, John Michael Johnson was involved in an automobile accident with another car occupied by Janice Bailey, Samuel Bailey, Jimiah Bailey, Eric Bailey, and Ladavian Smith (hereinafter referred to as the "Baileys"). Johnson immediately notified his insurance carrier, Safeway Insurance Company of Alabama, of the accident. On December 30, 1997, a Safeway claims adjuster sent a letter to the Baileys requesting them to authorize medical-consent forms so Safeway could evaluate their claims for medical expenses.
On January 13, 1998, the Baileys[1] sued Johnson in the district court. On January 20, 1998, the Baileys' attorney wrote Safeway, stating:
 "This letter is to inform you that this law firm represents the above named individual[s] with regard to any and all claims resulting from injuries and/or property damage sustained in an automobile accident which occurred on or about the above date. Please direct all future communications to me and do not contact our client.
 "Please confirm or deny in writing that your company has coverage for the above named insured. Also, please forward to me a copy of any and all written or recorded statements obtained from our client. If you have any questions, do not hesitate to give me a call. Otherwise, as soon as I have had an opportunity to gather the necessary specials and evaluate the case, I will be in touch with you.
 "Also, we would like to know the location of the Defendant's automobile that was involved in the collision so that we can have our investigator, Billy Smith, photo and inspect it. Please get in touch with me as soon as possible with this information. Thanks."
Johnson did not appear in court, and the trial court entered a default judgment against him on February 23, 1998. On *Page 220 
March 17, 1998, the Baileys filed a petition for a writ of garnishment against Johnson, listing the garnishee as Safeway. On April 2, 1998, Safeway answered the petition, denying that it owed any money to the Baileys. Safeway filed a declaratory judgment in the circuit court to determine whether it owed any amounts to the Baileys under its policy with Johnson. On April 12, 1998, the district court found in favor of the Baileys on the declaratory judgment action and entered a judgment against Safeway. On May 4, 1998, Safeway appealed to the circuit court from the district court's judgment. On June 23, 1998, Safeway moved the circuit court to consolidate both cases; the court granted the motion.
Both the Baileys and Safeway moved for a summary judgment. On January 8, 1998, the circuit court entered a summary judgment in favor of the Baileys on Safeway's declaratory judgment action. This appeal followed.
In Watts v. Preferred Risk Mutual Ins. Co., 423 So.2d 171
(Ala. 1982), Ware (the driver) and Watts (the passenger) were involved in an accident while riding in Ware's father's automobile, which was insured by Preferred Risk. Preferred Risk investigated the accident and paid all of Watts's medical bills. Watts sued Ware for damages based on her injuries. Ware did not answer and a default judgment was entered. Preferred Risk filed a declaratory judgment action, requesting the trial court to hold it free from liability, alleging that Ware, after being served with the suit papers, i.e., the papers indicating the action, had failed to forward those papers to Preferred Risk, as the provisions of the policy require.
The Watts court found that because no papers had been forwarded to Preferred Risk and because Preferred Risk had not been informed of the lawsuit until after damages had been proved and a default judgment had been entered, Preferred Risk was not liable. The court noted that the insurance policy contained a provision requiring that, as a condition precedent to any action on the policy, a copy of the suit papers be forwarded immediately to Preferred Risk. The purpose of this provision is to afford the insurer an opportunity to control litigation.
In Safeway Insurance Co. of Alabama v. Thompson,688 So.2d 271 (Ala.Civ.App. 1996), an automobile insured by Safeway was involved in an accident; within two weeks of the accident, Safeway was notified that an accident had occurred. After investigating the accident, a Safeway claims adjuster determined that the driver of its insured car was at fault and should pay all claims. Before filing suit, an attorney representing the plaintiffs called Safeway and made a demand for damages for personal injury. Safeway did not pay. A year later, the plaintiffs in Thompson
sued the driver, seeking damages for their personal injuries. The plaintiffs' attorney timely sent copies of the suit papers to Safeway. Safeway obviously was aware of the lawsuit; it sent its insured a certified letter asking for any "suit papers," but its insured did not respond to the request. The insured driver did not appear at trial and a default judgment was entered. Subsequently, garnishments were entered against Safeway. The trial court found that Safeway had had notice of the lawsuit, and it enforced the garnishments. Safeway appealed, arguing that the driver had failed to send the suit papers notifying it of the lawsuit.
In Thompson, we stated:
 "We hold that the evidence presented in this case supports the trial court's findings that Safeway acted like `the proverbial tar baby.' Despite the recommendation of its claims adjuster to pay all the claims; despite the opportunity it had to settle the claims within the limits of the . . . policy; and despite its knowledge that [the plaintiffs] planned to sue [the driver] for damages, Safeway did nothing. Once the suit was filed, not only was the insurance company aware that [the driver] had been sued, but it *Page 221 
was provided with copies of the lawsuits by [the plaintiffs'] attorney.
 "Under these facts, to allow Safeway to avoid liability simply because it did nothing for so long would not only be unfair to the plaintiffs, who did all they could to get Safeway involved, but would also be a gross manipulation of the law. The requirement that an insured defendant provide the insurance company with suit papers is meant to allow the insurance company to control the litigation. It is not meant to allow insurance companies to escape liability simply by `waiting out' people like [the driver] who seem likely to let matters slide. . . ."
688 So.2d at 273-74.
We disagree with the Baileys' argument that we should apply an ore tenus presumption of correctness to the trial court's findings that Safeway had actual notice. The Baileys state in their brief that the court based its findings on the arguments of counsel and on Johnson's deposition testimony. Because there was no oral testimony and the trial court's ruling was based on depositions and arguments, the ore tenus rule has no application in this case. See Continental Electric Co. v. City of Leeds,473 So.2d 1056 (Ala.Civ.App. 1984) (where a case is heard on depositions, stipulations, and other written evidence, the ore tenus rule has no application). "The rationale behind the ore tenus rule has historically been that the trial court deserves a presumption of correctness when it is in a position to actually see [the witnesses] and hear the testimony, observing firsthand the demeanor of the witnesses." Hospital Corp. of America v.Springhill Hospitals, Inc., 472 So.2d 1059, 1060 (Ala.Civ.App. 1985).
The Baileys contend that the letter from their attorney to Safeway and Johnson's notice to Safeway that an accident had occurred, along with Johnson's deposition testimony that he had sent to Safeway copies of the papers delivered by the sheriff, amounts to actual notice to Safeway. We disagree. First, Johnson's notice to Safeway that he had been involved in an accident occurred immediately after the accident and before the lawsuit was filed. At that point, Safeway did not know whether litigation would ensue. Second, nothing in the letter from the Baileys' attorney indicates that a lawsuit had been filed, even though one indeed had been filed seven days earlier. Third, Johnson's deposition testimony is very confusing as to what papers he sent Safeway and when he sent them. It is apparent from the deposition that the attorneys were confused as well, because they discussed issuing a subpoena for Johnson's papers so that he could identify the papers he sent and when he sent them. Apparently, this was not done. Further, there is an affidavit from Safeway's attorney that he did not receive any papers from Johnson until after the garnishment was filed. By that time, a default judgment had already been entered against Johnson.
Unlike Thompson, where Safeway had timely received copies of the lawsuit papers from the plaintiffs' attorney, in this case, Safeway never had the opportunity to control the litigation, because a judgment had been entered before Safeway had knowledge that a lawsuit had been filed. Safeway did have knowledge that its insured had been involved in an accident, and it knew that the Baileys were being represented by an attorney. However, this does not mean that Safeway had notice that a lawsuit had been filed so that it could control the litigation and appear in court on behalf of its insured. The accident occurred in December 1997. The lawsuit was filed in January 1998; however, the Baileys had until December 1999 to file suit. Although Safeway had been notified of the accident and knew that the Baileys were represented by counsel, it did not know when, or if, a lawsuit would be filed within the two-year period. Accordingly, we reverse the judgment and remand the case for further proceedings. *Page 222 
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
Robertson, P.J., and Monroe, Crawley, and Thompson, JJ., concur.
[1] Four separate complaints were filed in the district court on behalf of the different members of the Bailey family by the same attorney, each alleging that Johnson had been negligent and/or wanton and that the plaintiff in each complaint had been injured as a result of that negligence and/or wantonness. Subsequently, the cases were consolidated.