**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13138

————————————

A.B.,
a minor, by and through her next friend and parent, J.B.,

*Plaintiff-Appellant*,

*versus*

DAVID JACOBS BARROW,
NATIONWIDE MUTUAL INSURANCE COMPANY,

*Defendants-Appellees*.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:22-cv-01314-CLM

————————————

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit
Judges.

LAGOA, Circuit Judge:

This appeal turns on whether notice given nearly five years after an occurrence can satisfy an insurance policy's requirement that written notice be given "as soon as reasonably possible." The underlying conduct that could have triggered coverage happened in 2013. But Appellee, Nationwide Mutual Insurance Company, did not receive notice until November 2018. The district court ruled that this 58-month delay was untimely as a matter of law and entered summary judgment for Nationwide. After careful review of the record, and with the benefit of oral argument, we affirm the entry of summary judgment in favor of Nationwide.

## I.    FACTUAL BACKGROUND

The facts giving rise to this appeal stem from a series of prior proceedings, one of which came before this Court. *See Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299 (11th Cir. 2022). Appellant, A.B., is a "young woman who was sexually exploited by her mother and David Barrow when she was 10 years old." *Id.* at 1300. In February 2018, A.B. filed a lawsuit against Barrow in Alabama, alleging that Barrow invaded her privacy. The state court held a bench trial on her privacy claims in April 2022 and ruled for A.B. It awarded $4 million to A.B. in compensatory damages and $6 million to A.B. in punitive damages, for a total verdict of $10 million.

While her invasion of privacy lawsuit was underway, A.B. filed a separate lawsuit against Barrow and his wife in February 2018 under the Alabama Fraudulent Transfer Act. During discovery in that action, A.B.'s attorney requested that Barrow and his

wife provide "[a] copy of all insurance policies in force and effect" at the time of Barrow's offending conduct. Counsel for Barrow's wife responded on September 25, 2018, stating that he thought Barrow was insured by Nationwide. Following the lead from that tip, A.B.'s attorney served a subpoena on Nationwide on November 9, 2018, requesting production of its policies. Nationwide complied with the subpoena, and A.B.'s attorney received a copy of the requested policies in January 2019.

One of Barrow's Nationwide policies provided him personal umbrella liability coverage for occurrences involving the "invasion of rights of privacy." To qualify for coverage, the policy required that "[y]ou or someone on your behalf must[,] as soon as reasonably possible, give us, our agent[,] or sales representative written notice of an occurrence to which this policy may apply." The policy also required Barrow or someone on his behalf to "promptly give us all legal papers or reports relating to the occurrence when a claim or suit is filed against an insured."

It is undisputed that Nationwide received at least constructive notice of Barrow's 2013 conduct, as well as the invasion-of-privacy lawsuit filed against him, when A.B.'s attorney served the subpoena on Nationwide in November 2018. In July 2019, Nationwide retained counsel to defend Barrow as its insured in state court, who continued to represent Barrow through the 2022 verdict entered against him. As part of that representation, counsel deposed A.B., defended Barrow's deposition, and represented Barrow at trial.

In July 2022, following the state court's entry of judgment on A.B.'s $10 million verdict and Barrow's failure to pay the judgment, A.B. sued Nationwide and Barrow in state court under Alabama's Direct Action Statute. That statute permits prevailing plaintiffs like A.B. to "proceed against the defendant and [his] insurer to reach and apply [any available] insurance money to the satisfaction of the judgment." ALA. CODE § 27-23-2 (1975). Consistent with section 27-23-2, A.B. sought to reach and apply up to $10 million in coverage under Barrow's umbrella liability policy issued by Nationwide.

Nationwide removed the coverage action to federal court, and the district court granted summary judgment for Nationwide on the ground that "neither Barrow nor A.B. notified Nationwide of its potential duty to indemnify in the time required by the umbrella policy." *A.B. by & through J.B. v. Barrow*, No. 4:22-CV-1314-CLM, 2024 WL 3995312, at *1 (N.D. Ala. Aug. 29, 2024). After noting the 58 months between Barrow's conduct and Nationwide's receipt of A.B.'s subpoena and observing that, under Alabama law, delays of "four, five, six, and eight months require a reasonable excuse," *id.* at *6, the district court determined that Barrow "offered no excuse or explanation for his failure to notify Nationwide." *Id.* at *7. It further rejected A.B.'s argument that "her ignorance of the policy excuse[d] the delay," concluding that Alabama law "ma[de] clear that the excuse is tied to the policy holder." *Id.* Because A.B. "offer[ed] no excuse for Barrow's failure to notify," the district court entered judgment for Nationwide. *Id.* (emphasis omitted). A.B. timely appealed.

## II.    STANDARD OF REVIEW

We review the grant of summary judgment *de novo*. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). The parties agree that Alabama law applies, and the interpretation of an insurance contract is a question of law. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). When the terms of a contract are unambiguous, the contract is enforced according to those terms. *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226, 1228 (Ala. 1997). No ambiguity exists when, examining the contract as a whole and giving the words their ordinary meaning, the contract has "only one reasonable interpretation." *Lafayette Land Acquisitions II, LLC v. Walls*, 385 So. 3d 519, 522 (Ala. 2023).

## III.    ANALYSIS

Three disputes frame this appeal. The first concerns who was authorized to give notice under the policy. A.B. contends that her attorney could provide notice "on [Barrow's] behalf," while Nationwide maintains that only Barrow himself, or someone acting with his authorization, could do so. The second issue concerns whether notice, however authorized, was timely under the policy's requirement that written notice be given "as soon as reasonably possible" after the 2013 occurrence. The third issue concerns whether the district court improperly relied on background facts regarding Barrow's criminal conduct in granting summary judgment. We address each issue in turn.

### A. Whether the Policy Permitted A.B. to Provide Notice on Barrow's Behalf.

The "Policy Conditions" section of Barrow's policy describes the notice requirement as follows:

> **4. Notice**. **You** or someone on **your** behalf must:
> (a) as soon as reasonably possible, give **us**, **our** agent or sales representative written notice of an **occurrence** to which this policy may apply.
> (b) promptly give **us** all legal papers or reports relating to the **occurrence** when a claim or suit is filed against an **insured**.

(emphasis in original). The policy defines "you" and "your" to mean "the first named **insured** shown on the Declarations," which in this case is Barrow. It defines "occurrence" to include incidents resulting in "**personal injury** caused by an **insured** . . . during the policy period." And it defines "personal injury" to include "invasion of rights of privacy." As relevant to the dispute here, the policy required Barrow "or someone on [his] behalf" to provide written notice to Nationwide of the occurrence "as soon as reasonably possible."

It is undisputed that Nationwide's first notice of the occurrences came on November 9, 2018, when A.B.'s attorney served a subpoena on Barrow's Nationwide agent in the underlying state litigation. The parties disagree, however, whether that act constituted notice given "on [Barrow's] behalf" under the policy. We conclude that it did.

24-13138                Opinion of the Court                7

Alabama courts interpret insurance policies "as a reasonable person in the insured's position would have understood them," giving "words used in the policy their common, everyday meaning" and construing ambiguous provisions "in favor of the insured." *Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 699–700 (Ala. 2012) (emphasis and citations omitted). Traditionally, "[t]he phrases *in behalf of* and *on behalf of* have . . . signified different things." *Behalf*, BLACK'S LAW DICTIONARY (12th ed. 2024) (citation omitted). "In behalf of" historically meant "in the interest or for the benefit of," while "on behalf of" meant "as the agent or representative of." *Id.* (citation omitted). But "[i]n current usage," the distinction between "on behalf of" and "in behalf of" is "seldom followed." *Id.* (citation omitted).

"On behalf of" is "much more common in both senses," meaning it now signifies actions taken "in the interest or for the benefit of" another, even if those actions were not performed by an "agent or representative." *Id.* (citation omitted); *see also Behalf*, WEBSTER'S THIRD NEW INT'L DICTIONARY 198 (1993) (defining "in behalf of *or* on behalf of" as "in the interest of: as the representative of: for the benefit of").

Nationwide relies on traditional agency principles to define "on behalf of," arguing that A.B.'s attorney could not have acted on Barrow's behalf because the attorney did not represent Barrow as his agent. But this interpretation fails to account for the "common, everyday meaning" of the term as it has evolved. *Ala. Gas*, 117 So. 3d at 699 (citation omitted). The American Heritage Dictionary

explains that, although the traditional interpretation of *"in behalf of"* has been "for the benefit of," while *"on behalf of"* has been understood "as the agent of," those meanings have changed:

> [Because] the two meanings are quite close, the phrases are often used interchangeably, even by reputable writers. Statistically, *on behalf of* is used far more frequently than *in behalf of*, and in fact the Usage Panel prefers *on behalf of* for both meanings. In our 2004 survey, 87 percent of the Panel preferred *on behalf of* in the sentence *The lawyer spoke to the media (in behalf of/on behalf of) his client*, conforming to the traditional rule for using *on behalf of*. But some 75 percent also preferred *on behalf of* in the sentence *After sitting silently as one complaint after another was raised, he finally spoke up (in behalf of/on behalf of) his kid's* coach, where the speaker is less of a spokesperson than an ad-hoc defender, and so the meaning "in defense of, for the benefit of" is a better fit, and the traditional rule therefore would require *in behalf of*. All this suggests that *on behalf of* may be generally supplanting *in behalf of*.

*Behalf*, AMERICAN HERITAGE DICTIONARY (5th ed. 2022).

As reflected in modern dictionaries and usage guides, a reasonable person in Barrow's position could have understood that Nationwide's allowance of notice by "someone on [Barrow's] behalf" permitted notice by anyone acting in his "interest" or for his "benefit." *Behalf*, BLACK'S, *supra*; *Behalf*, AMERICAN HERITAGE, *supra*; *Behalf*, WEBSTER'S THIRD, *supra*. Applying this definition to the facts of the case, A.B.'s attorney was authorized to provide notice

under the policy and did so in Barrow's interest and benefit because the attorney was attempting to satisfy a condition precedent that would increase Barrow's chances of obtaining coverage. As Nationwide told the district court, Barrow's and A.B.'s interests were "identical or at least materially so" because "[t]he only thing that Barrow could want out of this [coverage] case is for A.B. to win."

Even without a policy provision expressly permitting notice by "someone on [Barrow's] behalf," Alabama law has long "recogniz[ed] an injured party's right [to proceed] against an insurer when the injured party has . . . given notice of the underlying lawsuit to the insurer, even when the insured has failed to do so." *Alfa Ins. Co. v. Templeton*, 919 So. 2d 300, 304–05 & n.3 (Ala. Civ. App. 2005) (citing *Safeway Ins. Co. of Ala. v. Thompson*, 688 So. 2d 271, 273–74 (Ala. Civ. App. 1996)). As the Supreme Court of Alabama has suggested, "written notice by an injured party instead of its insured could satisfy the notice requirements" of a policy with language requiring that notice come from the insured. *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 341–42 (Ala. 2011) (describing commercial liability policy "provid[ing] that [insured] must notify [insurer] 'as soon as practicable of an "occurrence" or an offense which may result in a claim'").

In sum, the policy's broad language permitting notice by someone acting "on [Barrow's] behalf," the ordinary meaning of that phrase, and Alabama precedent recognizing that an injured party *may* provide notice (even if the insured fails to do so) all point in the same direction. We therefore conclude that A.B.'s attorney

was authorized, both under the policy and under Alabama law, to give notice to Nationwide.

But authorization alone does not save A.B.'s claim. To survive summary judgment, she must show that a reasonable jury could find that Barrow or someone on his behalf gave notice "as soon as reasonably possible." We thus turn to address whether under Alabama law notice was timely.

### B. Whether Nationwide Received Timely Notice.

The Supreme Court of Alabama has held that policies requiring notice "as soon as possible" and notice "as soon as practicable" mean that "notice must be given within a reasonable time under the circumstances of the case." *Allstate Ins. Co. v. Fogg*, 300 So. 2d 819, 821–22 (Ala. 1974) (citation omitted); *accord Miller*, 86 So. 3d at 342. "The exact phraseology used" makes "very little, or any, difference." *Fogg*, 300 So. 2d at 821–22 (citation omitted). "Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay." *Miller*, 86 So. 3d at 342. The presence or absence of "[p]rejudice to the insurer from any such delay in providing notice is not a factor." *Id.* And "where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay," courts should render judgment for the insurer "as a matter of law." *Id.* at 343–44 (citations omitted).

Whether Nationwide received timely notice under its policy depends on whether we evaluate timeliness from the perspective

of A.B. as the injured party or instead from the perspective of Barrow as the insured. Regarding A.B., the clock does not start ticking to provide reasonable notice until after a claimant "learn[s] of the existence of the policy and obtain[s] possession of it." *Am. Liberty Ins. Co. v. Soules*, 258 So. 2d 872, 879 (Ala. 1972) (citation omitted); *see also* 13A JORDAN R. PLITT ET AL., COUCH ON INSURANCE § 192:1 (3d ed. June 2025 update) (stating that "failure to provide timely notice required by the insurance policy may be excused" based on the "inability to discover the existence of a policy and its terms").

A.B. and her attorney had no reason to suspect that Barrow had a policy with Nationwide until September 25, 2018, when counsel for Barrow's wife stated in response to an email inquiry that he "th[ought]" Nationwide was the insurer. And A.B.'s attorney did not actually receive the Nationwide policy until mid-January 2019. Accepting the district court's unchallenged determination that a jury could find notice was given on November 9, 2018, Nationwide thus received notice before A.B.'s attorney ever obtained the policy. On these facts, A.B.'s attorney acted with reasonable promptness.

Barrow, however, stands on different footing. Barrow "is presumed to be familiar with the provisions of his policy," *Crook v. Allstate Indem. Co.*, 314 So. 3d 1188, 1200 (Ala. 2020) (citation omitted), which was issued to him in October 2013, and he committed the conduct triggering the umbrella policy in late 2013. Nothing in the record suggests that Barrow did not receive or understand the policy, or that he was otherwise excused from giving notice. But

Barrow never notified Nationwide of the conduct triggering the policy. Instead, the record establishes that 58 months passed before A.B.'s attorney did so.

In Alabama, the timeliness inquiry turns not on equitable considerations but on the *reason* for the delay itself. As Alabama law makes clear, "in making this determination as to whether notice was given as soon as reasonably possible the only factors to be considered are the length of the delay in giving notice and the reasons therefor." *U.S. Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000). Thus, once a delay is shown, the insured must come forward with evidence of a reasonable justification. Indeed, "where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice." *Miller*, 86 So. 3d at 343–44 (citation omitted). Applied here, these principles foreclose any attempt to shift the notice obligation to a later date through action taken by A.B. on Barrow's behalf.

The Supreme Court of Alabama has held that even "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 536 (Ala. 2008). Here "there is no evidence of any excuse or justification for [Barrow's] failure to provide the requisite notice." *Id.* As such, the notice provided in November 2018 on his behalf was untimely.

Barrow's untimely delay is dispositive under the policy and Alabama law.  The policy requires "[Barrow] or someone on [his] behalf" to inform Nationwide of an occurrence "as soon as reasonably possible."  A.B. does not dispute that it was "reasonably possible" for Barrow to give notice long before November 2018.  And if it was reasonably possible for Barrow to do so, then it was also reasonably possible for "[Barrow] or someone on [his] behalf" to do so during that same period.  *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (noting that "or" is "almost always disjunctive" (citation omitted)).  Any other reading would detach the phrase "on [his] behalf" from the policy's single timing requirement and create two different notice deadlines.  The policy does not permit that result. Had Barrow waited until November 2018 to notify Nationwide himself, the 58-month delay would plainly bar coverage.  Yet under A.B.'s theory, her attorney could revive that same forfeited coverage by providing notice on Barrow's behalf on that same day.  The policy allows notice from someone other than Barrow; it does not reset the notice clock for that person.

Two Alabama precedents confirm that Barrow's inexcusable delay is dispositive.  In *Files*, the Supreme Court of Alabama considered whether a policy provision requiring notice of an occurrence "as soon as practicable" barred coverage where the policyholder injured the plaintiff but "never notified" the insurer of the incident.  10 So. 3d at 533.  The plaintiff's attorney informed the insurer of the incident five months after it occurred, and the court assumed without deciding that the insurer's "actual notice of the occurrence excused [the insured] from any continuing duty" to

provide notice. *Id.* at 533, 536. Based on the notice provided by the plaintiff's attorney, the court calculated the delay to be only five months. *Id.* at 536.

But in assessing the reasonableness of the delay, the court focused exclusively on the insured's—not the plaintiff's—excuses. Because the insured "did not testify at trial," there was "no evidence of any excuse or justification for *his* failure to provide the requisite notice as soon as practicable." *Id.* (emphasis added). And the plaintiff "ma[de] no attempt to justify [the insured's] failure." *Id.* The court thus held "as a matter of law" that the insured "failed to comply with the notice requirement of his . . . insurance policy." *Id.* In turn, the plaintiff was "not entitled to reach and apply the liability coverage of that policy to satisfy the judgment he obtained against [the insured]." *Id.*

The Supreme Court of Alabama took the same approach in *Miller*. As in *Files*, the insurance company in *Miller* received notice of an occurrence from the "injured party" but not the insured. 86 So. 3d at 342. The court "note[d] that [the insurer] d[id] not dispute that written notice by an injured party instead of its insured could satisfy the notice requirements of the policies." *Id.* So, it proceeded to determine "whether such notice was timely." *Id.* In doing so, it again focused on timeliness from the perspective of the insured. *See id.* at 347–48 (holding "[u]nder our decision in *Files* [that the plaintiff was] barred from recovering under the [insured's] policies" because the insured "did not provide [the insurer] with notice of the occurrence" and the plaintiff "did not offer any excuses" for the

insured's delay).  The *Miller* court also overruled as an "aberration" a prior decision suggesting that an injured party could cure an insured's notice deficiency without offering a persuasive reason for the insured's delay. *See id.* at 344–47 (discussing *Haston v. Transamerica Ins. Servs.*, 662 So. 2d 1138 (Ala. 1995)).

The court in both cases assumed that notice could come from the injured party.  *See Files*, 10 So. 3d at 536; *Miller*, 86 So. 3d at 342.  And in considering the timeliness of such notice, the court held that notice provided by an injured party is timely only if it would have been timely from the perspective of the insured.  *Files*, 10 So. 3d at 536; *Miller*, 86 So. 3d at 347–48.  This approach is logical because, as the court explained in *Files*, "the terms of the policy imposing obligations on the insured are effective as against the injured party."  10 So. 3d at 534 (citation omitted).  In other words, an injured party standing in the shoes of an insured under section 27-23-2 cannot provide "timely notice . . . independent of the contractual duties of the insured."  *Miller*, 86 So. 3d at 347.

Barrow did not act diligently, and the consequences for A.B. are significant.  But the policy imposed a single notice obligation, one that applied equally whether notice came from Barrow himself or from someone acting on his behalf.  It cannot be that Barrow was bound by one timeline while A.B. or her attorney enjoyed another, later one.  Nor can A.B., as a third-party claimant proceeding through Barrow, obtain greater rights under the policy than Barrow himself possessed.  The notice requirement ran from the occurrence, and it bound both Barrow and anyone acting on his

behalf.  Because that obligation was not satisfied, and because no valid excuse for Barrow's 58-month delay was offered, we are not free to rewrite the contract to reach a different result.  The district court therefore correctly granted summary judgment for Nationwide.

### C. Whether the District Court Violated Rule 56.

Finally, A.B. argues that the district court violated Federal Rule of Civil Procedure 56 by including background facts concerning Barrow's criminal conduct, and that those facts improperly influenced its coverage analysis.  The record does not support that contention.  The district court's ruling rests on the policy's notice provisions and Alabama law governing timeliness.  The background facts appear only to provide context and chronology.  We likewise recounted similar facts in our prior decision addressing these same events.  *See Barrow*, 29 F.4th at 1300–01.  The inclusion of such background material does not implicate Rule 56 and furnishes no basis for reversal.

### IV.    CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of Nationwide.